356 P.2d 399

**BOARD OF REGENTS OF the UNIVERSI- TIES AND STATE COLLEGE of Arizona, Appellant,**

v.

**CITY OF TEMPE, a municipal corporation; Hugh E. Laird, its Mayor; Rudolph E. Campbell; Francis N. Connolly; L. Alton Riggs; Clyde E. Gililland; Arthur L. Livingston; Dr. Ross R. Rice, members of and comprising its City Council; A. L. Bunger, its City Manager, E. M. Barbre, the City Clerk; Paul Wykoff, the City Building Inspector; Samuel Kees, City Magistrate; E. Worth Farley, its Chief of Police, and William Barnes, its City Attorney, Appellees.**

**No. 7002.**

Supreme Court of Arizona.

Oct. 19, 1960.

Rehearing Denied Nov. 15, 1960.

---

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., Stanley Z. Goodfarb, Asst. Atty. Gen., and J. Byron McCormick, Tucson, Advisor to Bd. of Regents, on the brief, for appellant.

William Barnes, City Atty., Lewis, Roca, Scoville, Beauchamp & Linton, by W. E. Patterson and John P. Frank, Phoenix, for appellees.

League of Arizona Cities and Towns, amici curiae.

BERNSTEIN, Justice.

Appellant Board of Regents of the Universities and State College of Arizona (hereinafter called the "Board" or "Board of Regents") appeals from a judgment of the Superior Court of Maricopa County denying its prayer for injunctive relief against the City of Tempe and officials thereof.

The record shows that the Board of Regents is engaged in an extensive construction and remodeling program to provide the buildings and other facilities necessary for the education of the increased number of students enrolled at Arizona State University. This program is carried on under the supervision and control of the Building and Grounds Department of the University. The City of Tempe, within whose boundaries the University is located, has promulgated various building codes and regulations which require that building, electrical and plumbing permits be obtained, and licensee fees paid, before construction may commence within the City. The Board having failed to secure these permits or pay the fees, the City in August 1959 served a Stop Order against further construction and advised the University that criminal sanctions would be strictly enforced if the University failed to comply with the City codes.

The Board of Regents thereupon commenced this action to enjoin the City of Tempe from interfering with the University's construction program, from demanding compliance with its building codes and from threatening or instituting civil or criminal proceedings. The Superior Court issued a temporary restraining order against the City, but, thereafter, held, as a matter of law, that the City had the power to regulate the construction and maintenance of the University's buildings. The restraining order was thereupon dissolved and judgment was entered denying injunctive relief to the Board.

The City urges preliminarily that, by virtue of A.R.S. § 12–1802, the Superior Court was without jurisdiction to entertain the Board's application for injunctive relief against the City and its officials. We consider this contention to be without merit.

A.R.S. § 12–1802 provides, in relevant part:

"An injunction shall not be granted:

\* \* \* \* \* \*

"4. To prevent enforcement of a public statute by officers of the law for the public benefit."

Although it is clear that the above section generally bars a party from obtaining injunctive relief against threatened civil or criminal proceedings predicated on a public statute, this Court has on several occasions held an injunction to be a proper remedy where it is alleged that the statute is invalid or is being applied in an unauthorized manner. See McCluskey v. Sparks, 80 Ariz. 15, 291 P.2d 791; Thrift Hardware & Supply Co. v. City of Phoenix, 71 Ariz. 21, 222 P.2d 994, 22 A.L.R.2d 810; Crane Co. v. Arizona State Tax Commission, 63 Ariz. 426, 163 P.2d 656, 163 A.L.R. 261; see City of Glendale v. Betty, 45 Ariz. 327, 332, 43 P.2d 206.

In Crane Co. v. Arizona State Tax Commission, supra, the Court, in affirming in part an injunction issued against the State Tax Commission, stated:

"Notwithstanding the statute, we believe it to be the law that if public officers exceed their authority and resulting injury cannot be adequately provided by proceedings at law, equity will enjoin the commission of such illegal act. \* \* \*

"While it is true that courts will not interfere by injunction where officers are acting in the execution of a public statute, they may be enjoined from acts which are beyond their power." 63 Ariz. at page 445, 163 P.2d at page 664.

See also McCluskey v. Sparks, supra, where the Court, in sustaining a complaint which sought to enjoin the assessor of Maricopa County, stated:

"Defendants present the proposition plaintiffs are attempting to enjoin the execution of a public statute in violation of section 26–104, A.C.A.1939 [now A.R.S. § 12–1802]. This section does prohibit the use of injunction to prevent the execution of a public statute by officers of the law. This case, however, does not come within the prohibition of the statute. Plaintiffs are not seeking to enjoin the assessor from assessing their property or the board of equalization from equalizing the same in accordance with the statutes applicable thereto. They are seeking to require these officials to comply with

the statutes and constitutions of Arizona and of the United States. This court has held that the taxing officials cannot under the pretense of executing a taxing statute impose taxes not authorized thereby." 80 Ariz. at pages 20–21, 291 P.2d at page 794.

In the instant case the Board of Regents contends that the City of Tempe is without power to enforce its building codes and regulations against Arizona State University. Implicit in that contention is the claim that such codes and regulations, in so far as they apply, expressly or impliedly, to the construction and remodeling program undertaken by the Board of Regents at the University, are improper and invalid on their face. Such contentions, if sustained, clearly warrant the injunctive relief sought herein.

Further, the City's threats to enforce its codes by criminal proceedings have apparently caused delays in the University's construction program, thereby imposing on the University and the public irreparable injury which makes damages at law totally inappropriate. In view of the public function fulfilled by the Board of Regents, we consider it highly undesirable to compel the Board to subject itself, the University or its employees to the risk of criminal or civil sanctions in order to obtain a judicial determination of the validity of the City's position.

The ultimate question is whether a city may apply its building codes and regulations to the construction and maintenance of a State university or college located within the city. Resolution of this question depends, in the main, on the legal status and powers of the university and of the city.

Article XI, Education, of the Arizona State Constitution provides in section 1, A.R.S.:

"The Legislature shall enact such laws as shall provide for the establishment and maintenance of a general and uniform public school system, which system shall include * * * a university * * *."

Section 2 thereof provides:

"The general conduct and supervision of the public school system shall be vested in a State Board of Education, a State Superintendent of Public Instruction, county school superintendents, and such governing boards for the State institutions as may be provided by law."

Section 5 thereof provides:

"The regents of the University * * * shall be appointed by the Governor, except that the Governor shall be, ex-officio, a member of the board of regents of the University."

A.R.S. § 15–721 provides that the Board shall consist of the Governor, the State

Superintendent of Public Instruction and eight members, appointed by the Governor with the advice and consent of the senate, who are required to execute a bond to the State. Section 15–723 sets forth the compensation of the appointed Board members.

A.R.S. § 15–724, as amended by § 15–729, provides:

"A. The board of regents shall be a body corporate with perpetual succession and shall have the name 'board of regents of the university and state colleges of Arizona.' The board shall have jurisdiction and control over the university and state colleges [including Arizona State University at Tempe].

"B. The board may:

"1. Adopt a corporate seal.

"2. Contract and be contracted with.

"3. Sue and be sued.

"4. Purchase, receive, hold, make and take leases of, and sell real and personal property, for the benefit of the state and for the use of the institutions under its jurisdiction."

A.R.S. § 15–725, provides, in part, that the Board shall:

"1. Enact ordinances for the government of the institutions under its jurisdiction."

The City of Tempe is a municipal corporation, without special charter, which derives its powers from Article XIII of the Constitution and Title 9 of the Arizona Revised Statutes. A.R.S. § 9–276, subdivision A, authorizes cities to:

"14. Prescribe the thickness, strength and manner of constructing stone, brick and other buildings, and construction of fire escapes.

"15. Fix and designate by ordinance fire limits within which no buildings having outside wooden walls shall be constructed or repaired so as to increase their value beyond a percentage to be fixed in the ordinance, and, by ordinance, prescribe special fire limits, within the general fire limits, requiring therein building material to be used and additional precautions to be observed in the construction of new buildings, and in the repairing and maintenance of buildings, as may from time to time be designated, for the prevention of fires and the spread thereof, and provide for the enforcement of the ordinance and for the appointment of a building inspector, his authority, his term of office and compensation."

A.R.S. § 9–461, subdivision B, provides:

"A city or town may, within an established [zoning] district, regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or lands."

We think it clear from the foregoing Constitutional and statutory provisions that the Board of Regents and the City of Tempe each has the power to regulate the construction and maintenance of buildings, within the limits of its authority. We are thus not faced with the situation where only the City, and not the Board of Regents or University, may validly prescribe building ordinances or regulations.

Further, the power of the Board over university construction is not subject to the supervision of the State Planning and Building Commission, which has charge of "the construction or erection of new buildings and the alteration, enlargement, rehabilitation or repair of existing buildings used or to be used by the state or any state agency * * *" (A.R.S. § 41–571.11). Programs, projects or improvements of the Board of Regents are expressly exempt therefrom (A.R.S. § 41–571.14).

The problem remains to resolve the conflict presented by the Board's and the City's assertions of apparently overlapping powers over university construction. It is not disputed that the ultimate power to resolve this controversy rests in the Legislature which concededly may assign exclusive jurisdiction to the Board or to the City. Nor does either party urge that the Legislature has answered this problem expressly. Both rely on the Constitution generally, the intention of the Legislature as gleaned from the applicable statutes, and on the case law.

The Board of Regents contends that it is an agency of the State and is thereby immune from regulation by a municipal corporation. The City argues that the Board is a corporate instrumentality of the State, but is not itself the State, and has not been exempted from operation of the broad police powers delegated by the State to the City.

Whether the Board of Regents is deemed to be the State depends on the particular circumstances of the case. Thus, in Board of Regents of University of Arizona v. Sullivan, 45 Ariz. 245, 42 P.2d 619, it was held that the Board of Regents is not the "state" within the meaning of Article IX, Section 5 of the Constitution imposing a dollar limitation upon the power of the State to contract debts. In State of Arizona v. Miser, 50 Ariz. 244, 256, 72 P.2d 408, 413, on the other hand, this Court held that the Board of Regents, and consequently the State University, "comes within the term, 'state,' as used in the Minimum Wage Law * * *."

We think it perfectly clear, however, that the Board of Regents may, for all purposes, be classified as a public agency of the State rather than a private corporation. In State of Arizona v. Miser, supra, Chief Justice McAlister said:

"The fact that the university is incorporated does not make it any the less an arm, branch or agency of the

state for educational purposes, and affects in no particular the power of the legislature over it." 50 Ariz. at page 253, 72 P.2d at page 412.

Justice Lockwood, concurring, agreed that:

"the University of Arizona, whatever its legal form, is but an agency of the State of Arizona, created for the purpose of carrying out one of the most important governmental functions of the state, to wit: the education of its citizens * * *." 50 Ariz. at page 261, 72 P.2d at page 415.

None of the ably presented briefs herein refers us to any Arizona case dealing with the question raised on this appeal. We turn then to decisions from other jurisdictions.

In the early case of Kentucky Institution for Education of Blind v. City of Louisville, 1906, 123 Ky. 767, 97 S.W. 402, 8 L.R.A.,N.S., 553, the City sought to apply its ordinance relating to fire escapes to a building of the Kentucky Institution for Education of the Blind. The Institution was created by State law, "under the direct control of a board of visitors, * * * appointed by the Governor upon the advice and with the consent of the Senate," who had direction, control and management of the Institution's buildings and grounds, subject to the supervision of the governor and the legislature (97 S.W. at page 403). In words appropriate to the Board of Regents herein, the court there stated that

"* * * although the institution is created a body corporate, with power to contract, and to sue and be sued, it is essentially an instrument of the state government, belonging entirely to the state, and being completely under its control." 97 S.W. at page 403.

In holding the city ordinance inapplicable to the Institution, the court stated:

"* * * [T]he state will not be presumed to have waived its right to regulate its own property, by ceding to the city the right generally to pass ordinances of a police nature regulating property within its bounds. * * * The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control. The municipal government is but an agent of the state—not an independent body. It governs in the limited manner and territory that is expressly or by necessary implication granted to it by the state. It is competent for the state to retain to itself some part of the government even within the municipality, which it will exercise directly, or through the medium of other selected and more suitable instrumentalities. How can the city have ever a superior authority to the state over the latter's own property, or

in its control and management? From the nature of things it cannot have." 97 S.W. at page 404.

In City of Milwaukee v. McGregor, 1909, 140 Wis. 35, 121 N.W. 642, the City commenced an action to enjoin the Board of Normal School Regents of the State of Wisconsin from erecting a school building within the City without a building permit. The court stated:

"Counsel for appellant present the case as if the Board of Normal School Regents is to be treated the same as an individual, acting for himself or for a private corporation, which is manifestly wrong. The building in question is to be for public use as state property. The situation is the same as if the structure was to be used for the care of the insane or for any other of the many state purposes which might be named. The fact that the board is made a state agency to take and hold title to property for state purposes does not cut any figure in the matter. The building is not designed to be, in any proper sense, the property of the board, except as representing the state." 121 N.W. at page 642.

In affirming a judgment against the City, the court held that the immunity of the state from municipal regulations applies to the Board of Regents which was commanded by law "to erect the building without regard to the judgment of any one outside of its own members, except as to approval of the plans by the governor" (121 N.W. at page 643).

In Salt Lake City v. Board of Education, 1918, 52 Utah 540, 175 P. 654, the court in holding that the City could not enforce its building code against school construction, stated:

" * * * [C]ounsel for respondent [the City] * * * concede that the ordinances of respondent would have no application to what they call state buildings, although such buildings are located within the limits of the city. This concession is made in deference to the principle quoted from the Kentucky case [Kentucky Institution for Education of Blind v. City of Louisville, supra] to which we have referred. Under our Constitution and statutes, however, we can conceive of no distinction between what are denominated by counsel state buildings, *such as the buildings of the State University,* or the Capitol, and our school buildings. True, the control of the university is placed in the hands of a board of regents whose duties and powers are perhaps defined with more particularity and detail than are the powers of the boards of education. That may perhaps also be true respecting the State Capitol. Be that as it

may, however, the public school buildings and their control are of as much concern to the state as are the other buildings, and a careful reading of the constitutional provisions and statutes relating to education clearly shows that the entire public school system (which includes the common schools as well as the university and the other state schools) remains entirely within the control of the state Legislature, and hence within the control of the state, except where certain powers are delegated to the several boards of education as herein indicated." (Emphasis added.) 175 P. at pages 658–659.

In Hall v. City of Taft, 1956, 47 Cal.2d 177, 302 P.2d 574, the Supreme Court of California, in holding that a municipal corporation's building regulations are not applicable to a school district's construction of a public school building in the municipality, stated:

"While a large degree of autonomy is granted to school districts by the Legislature, we are referred to no statute or constitutional provision which, as far as the question here involved is concerned, expressly makes school buildings or their construction any more amenable to regulation by a municipal corporation than structures which are built and maintained by the state generally for its use. When it engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." 302 P.2d at page 578.

The Court added:

" * * * [A]n additional ground why the construction of school buildings by school districts are not subject to the building regulations of a municipal corporation in which the building is constructed, is that the state has completely occupied the field by general laws, and such local regulations conflict with such general laws, when we consider the activity involved. A city may not enact ordinances which conflict with general laws on statewide matters." 302 P.2d at page 579.

See also Davidson County v. Harmon, 200 Tenn. 575, 292 S.W.2d 777; Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 113 A.2d 658; Board of Education of City of St. Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975; Rhyne, Municipal Law § 12–8 (1957); cf. Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911; State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo., 304 S.W.2d 896; City of Charleston v. Southeastern Construction Co., 134 W.Va. 666, 64 S.E.2d 676.

The leading case cited in support of the City's position is Kansas City v. School District of Kansas City, 1947, 356 Mo. 364, 201 S.W.2d 930. There, the city sought to collect from the school district fees for the city's inspection of school facilities. After stating that the school district had conceded "that the fees are reasonable in amount and are truly inspection fees, that is, the fees are not taxes in any sense" and that the city has the right to inspect the school building facilities (201 S.W.2d at page 931), the court held that

"if City's power to regulate and supervise School District's facilities in the respects herein involved is recognized, City, it seems, should have the right to collect such fees as are reasonable and incidental to and in reimbursement for the necessary expense of the regulatory inspections, inasmuch as the inspection of School District's facilities by City is made necessary in the full exercise of City's police power by the location of School District's school buildings within the corporate limits of the municipality of Kansas City. Still assuming City has the power to regulate and inspect School District's facilities in the respects herein involved, such a power must include the incidental power to exact inspection fees incidental to the inspections, a part of the regulation." 201 S.W.2d at page 932.

The court went further, however, and, after noting that there is "pregnant" in School District's argument the "doubt that City has the enforcible power to regulate and supervise School District's facilities" (201 S.W.2d at page 933), stated:

"Since the State itself has taken no precautionary measures, and City has been vested with the regulatory and supervisory responsibilities of the exercise of the police power, and School District (having no police power) has not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City." 201 S.W.2d at page 934.

See also Cook County v. City of Chicago, 311 Ill. 234, 142 N.E. 512, 31 A.L.R. 442.

The foregoing authorities persuasively support the claimed immunity of the Board of Regents in the instant case. The underlying rationale is that a State agency delegated by law the responsibility of performing a governmental function is not subject to the general police powers of a municipal corporation. Contrary to the City's contention, Hall v. City of Taft, supra, is predicated primarily on the ground that "the construction and maintenance of a school building is a sovereign activity of the state" (Town of Atherton v. Supe-

rior Court, 159 Cal.App.2d 417, 324 P.2d 328, 335), and only secondarily on the State of California's preemption of the field of school construction. In Kansas City v. School District of Kansas City, supra, counsel for the school district conceded the point, here in issue, that the city had the power to inspect the school buildings. The court's affirmation of the city's power rested on its conclusion that the school district was without regulatory authority. We consider the situation in Arizona to be significantly different.

The Board of Regents is vested by our Constitution with the "general conduct and supervision" of the State University (Article XI, Sections 1, 2, 5). By statute the Board has "jurisdiction and control over the university" and may "[e]nact ordinances for the government of the institutions under its jurisdiction" (A.R.S. §§ 15–724, 15–725). It has also been authorized to undertake specific construction projects at the universities and college (e. g.: Laws 1959, Chapters 114, 115, 116; Laws 1952, Chapters 139, 140; Laws 1949, Chapter 104, as amended, Laws 1958, Chapter 2).[1]

The Board of Regents is, thus, empowered to promulgate and enforce the necessary regulatory measures which the City here assigns exclusively to itself. Nor do we find expressed in our statutes an intention to restrict in any way the powers of the Board over university construction. The fact that certain agencies, including the Board of Regents, have been specifically exempted from supervision by the State Planning and Building Commission (A.R.S. § 41–571.14) reasonably implies not that control has been transferred to or confirmed in municipalities, but that these agencies are not engaged in activities requiring any supervision or, more applicable here, that the responsibility for and supervision of planning and building are more appropriately delegated to the agencies themselves than to a separate state commission.

1. We consider it a futile task to attempt to ascertain whether the university's current construction program is authorized by one or more of these specific statutes or by the general appropriation acts. Indeed, it would result in uncertainty and confusion if we were to determine the extent of the City's power over a particular project on the basis of the act or statute authorizing it. These specific statutes are a relevant guide, however, to the intention of the legislature and confirm our conclusion that the Board has broad supervisory and regulatory powers over university construction. Thus, under these statutes the Board of Regents is authorized to "erect, build, construct, reconstruct, repair, replace, extend, better, equip, develop, improve, and embellish" "buildings, structures, additions and improvements of every kind" including "the equipment therefor, and the extension of heating, lighting, and other service facilities in connection therewith" and to "perform all acts and do all things necessary or convenient to carry out the powers" thus granted (e. g.: Laws 1959, Chapter 115, Sections 1 and 2).

The essential point is that the powers, duties and responsibilities assigned and delegated to a state agency performing a governmental function must be exercised free of control or supervision by a municipality within whose corporate limits the state agency must act. The ultimate responsibility for higher education is reposed by our Constitution in the State. The legislature has empowered the Board of Regents to fulfill that responsibility subject only to the supervision of the legislature and the governor. It is inconsistent with this manifest Constitutional and legislative purpose to permit a municipality to exercise its own control over the Board's performance of these functions. A central, unified agency, responsible to State officials rather than to the officials of each municipality in which a university or college is located, is essential to the efficient and orderly administration of a system of higher education responsive to the needs of all the people of the State.

As a separate ground to support its position, the City urges that the Board of Regents, by accepting water, sewer and fire protection services from the City, and by having complied with the City's codes from the publication of the State Attorney General's Opinion No. 55–29 (dated February 18, 1955), ruling that Arizona State College of Tempe is required to obtain building permits from the City of Tempe, until the overruling of that opinion by Letter Opinion, dated June 23, 1959, has consented to regulation by the City. The City cites no cases on this precise point but analogizes the instant situation to that of the non-resident motorist who impliedly consents to being subject to the jurisdiction and regulations of the state in which he drives his automobile.

We note first that there is no statutory or other authority for the proposition asserted by the City. The non-resident motorist's liability is predicated on a specific legislative declaration (see A.R.S. § 28–502), which is absent here. Second, the Board has not, in fact, consented to be bound by the City's regulations. Nor does the acceptance of services from the City justify implying such consent as a matter of law. With respect to the Board's having complied with the City's codes between 1955 and 1959, in reliance on an opinion of the Attorney General, it is no more reasonable to deem that compliance to be a permanent consent to City regulation than it would be to declare that the City's apparent failure to enforce its codes against the Board for many years prior to 1955, during which years it furnished water, sewer and fire protection services to the Board, constituted an implied consent to the Board's immunity from City regulation.

Third, and most significant, we consider the fiction of consent totally inappropriate

**312**

to the resolution of a controversy involving the powers of a state agency and a municipal corporation. The issues thus raised must be resolved irrespective of any temporary accommodation voluntarily made by the public bodies to promote what is then believed to be in the public interest.

The City's suggestion that it is under no duty to furnish sewer, water or fire protection services to the University hardly advances its claim of power over the Board of Regents. Whether the City may withdraw these services raises issues well beyond the pale of this decision. Nor do we consider of serious import the City's conjecture that the Board's immunity from municipal regulation will increase the fire and health hazards to the residents of the City.

There is nothing to suggest that the Board will supervise the University's construction program with less concern for the public welfare than would the City. Indeed, we may well assume that this Court's determination of the scope of the Board's duties will be followed by an appreciation of the responsibilities generated thereby. It is thus unnecessary for us to consider or enumerate the judicial and other remedies available to insure that the Board, or any other state or municipal agency, performs its duties in a manner consistent with the health, safety and general welfare of the people of this State.

 We hold that the City of Tempe may not apply its building codes and regulations to Arizona State University.

The judgment is reversed and the cause remanded with directions to enter judgment against the City of Tempe for the injunctive relief prayed for in the complaint of the Board of Regents.

STRUCKMEYER, C. J., and PHELPS, UDALL and LESHER, JJ., concur.