721 P.2d 1169

**BOOK–CELLAR, INC.,**
Petitioner/Appellant,

v.

**CITY OF PHOENIX, Board of Adjustment of the City of Phoenix; and Larry Lazarus, Ernest Nedd, Jr., Ronald Bookbinder, Barbara Jarvis, Herman Orcutt, Albert Rogahn and Marie Peipelman, as Members of the Board of Adjustment, Respondents/Appellees.**

No. 2 CA–CIV 5697.

Court of Appeals of Arizona,
Division 2, Department A.

May 7, 1986.

Reconsideration Denied May 27, 1986.

Richard J. Hertzberg, Phoenix, for petitioner/appellant.

Phoenix City Atty. by Edward P. Reeder, Phoenix, for respondents/appellees.

## OPINION

HATHAWAY, Chief Judge.

Appellant operates The Owl Bookstore, an adult bookstore on Grand Avenue in Phoenix, Arizona. It wishes to relocate the business to another address on the opposite side of Grand Avenue. Both sites are zoned C–3, a general commercial zoning designation for intensive commercial uses. Phoenix's adult use zoning ordinance, § 417(B)(2), does not allow an adult business to be located within 500 feet of a residential zoning district. The proposed new site is within 500 feet of such a residential zoning district which, in this case, is the Arizona State Fairgrounds.

Appellant's present location is a nonconforming use established prior to the enactment of the adult business provisions of the zoning ordinance, entitling it to stay at that location indefinitely despite § 417(B)(2). On July 10, 1980, appellant sought an interpretation from the city zoning administrator claiming that § 417(B)(2) was not applicable to its proposed location because of the existence of the state fairgrounds on the residentially zoned site. The zoning administrator found in appellant's favor. On October 8, 1980, a special public hearing was held before the board of adjustment to consider the city's appeal of the zoning administrator's decision. The board reversed the zoning administrator and held that § 417(B)(2) applies to appellant. Book-Cellar filed a petition for special action in superior court seeking reversal of the board's decision.

Originally the trial court held that a special action was not the proper vehicle to test the board's decision. The court ruled that a petition for special action cannot be granted when it alleges only an abuse of discretion rather than alleging that the board acted in excess of its jurisdiction. That issue was appealed and the Court of Appeals held that special action proceedings were appropriate in *Book Cellar, Inc. v. City of Phoenix*, 139 Ariz. 332, 678 P.2d 517 (App.1983). Upon remand, the trial court ruled against appellant on the merits

and affirmed the board. This appeal followed.

Appellant raises three issues on appeal: (1) the municipal zoning ordinance does not apply to governmentally owned property upon which is located a governmentally owned facility such as the fairground; (2) the adult use ordinance is a restriction on speech and must be narrowly tailored to reach legitimate state interests and since the ordinance was designed to protect residential neighborhoods, not areas that happen to be zoned residential, it cannot be applied to the fairgrounds; (3) the board's application of the fairgrounds' residential zoning only to Book-Cellar and not to any other commercial activities conducted at the fairgrounds denies equal protection and abridges rights of free expression guaranteed to Book-Cellar under the First and Fourteenth amendments to the United States Constitution.

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Appellees argue that regardless of the merits of appellant's claim, it has not exhausted its administrative remedies and therefore we should dismiss this appeal. The thrust of appellees' argument is that appellant, not having sought a waiver of the 500-foot limitation pursuant to § 418–(B)(2) through the proper administrative channels, has failed to exhaust its administrative remedies.

■ The doctrine of exhaustion of administrative remedies does not force alternate elective procedures upon a party. Rather that doctrine requires a party, before turning to the courts, to exhaust all potential administrative remedies in order to obtain the relief originally sought. In the current situation, appellant is not seeking a waiver of the 500-foot limitation. Appellant's claim is that that limitation cannot be applied to it, in other words, appellant contends that it is not subject to the ordinance and there is no reason to apply for a waiver. We agree and find the cases cited by appellees requiring administrative ex-

haustion are inapposite. See e.g., *Minor v. Cochise County*, 125 Ariz. 170, 608 P.2d 309 (1980).

## II. GOVERNMENTAL v. PROPRIETARY FUNCTION

Appellant argues that the City of Phoenix has no right to zone the land owned by the state government and used as the Arizona State Fairgrounds. Appellant concludes that since the city cannot legally zone that area, it is not zoned residential and the 500-foot rule does not apply. Appellant is correct that a governmental body is generally not subject to zoning restrictions in its use of property for governmental purposes. *Board of Regents of the Universities and State College v. City of Tempe*, 88 Ariz. 299, 356 P.2d 399 (1960). The Arizona Coliseum and Exposition Center Board, which operates the state fairgrounds, is a subdivision of the State of Arizona. See A.R.S. § 3–1001, et seq. The general rule which bars municipal zoning of state functions does not apply to proprietary operations of the state. Therefore, if the state fairgrounds constitutes a proprietary operation, it can be properly zoned by the city. See *Board of Regents of Universities and State College v. City of Tempe*, supra; *City of Scottsdale v. Municipal Court of the City of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962).

The Arizona Attorney General opinion number 59–117, issued July 6, 1959, advised that the State Fair Commission, now the Coliseum and Exposition Center Board, does act in a proprietary capacity. In *Mills Music, Inc. v. State of Arizona and Arizona Coliseum and Exposition Center Board*, 591 F.2d 1278 (9th Cir.1979), the Ninth Circuit held that the operation of the state fairgrounds was essentially a commercial activity. We agree.

■ The operation of the fairgrounds is not a fundamentally inherent function of or encompassed within the basic nature of government. It is more a commercial activity which directly competes with other commercial activities in the city. Indeed, it

is not funded directly by state taxes but rather through bonds issued by the Arizona Coliseum and Exposition Center Board. These bonds are payable through revenues derived by operation of the fair. A.R.S. § 3–1008. Therefore, the city can properly zone the area used as the state's fairgrounds. Because the fairgrounds operated well before the enactment of the residential zoning ordinance, the nonconforming use by the state is protected. A.R.S. § 9–462.02.

## III. CONSTITUTIONALITY OF 500–FOOT LIMITATION ON ITS FACE AND AS APPLIED

Appellant does not facially challenge the constitutionality of zoning ordinance § 417(B)(2). To challenge this ordinance on its face would be a fruitless effort since such ordinances have been uniformly held constitutional. *City of Renton v. Playtime Theaters, Inc.*, —— U.S. ——, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310, reh. den. 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976); *Northend Cinema, Inc. v. Seattle*, 90 Wash.2d 709, 585 P.2d 1153 (1978), cert. den. 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979). See also, Validity of "War Zone" Ordinances Restricting Location of Sex-Oriented Businesses, 1 A.L.R.4th 1297 (1980); but see *Avalon Cinema Corporation v. Thompson*, 667 F.2d 659 (8th Cir. 1981).

■ In *Renton*, the court held that statutes such as Phoenix's are content neutral, as opposed to content based speech restrictions. This is an important distinction. If the statute is found to be content based, it would presumptively violate the first amendment and would be subject to strict constitutional scrutiny. If, however, the statute is content neutral, as the city's is, it is constitutional as long as it serves a substantial state interest and is reasonable as to time, place and manner of imposition. See *Renton*. The city's statute clearly, on its face, meets the above standard.

A statute, however, curtailing free speech may not only be found void on its face, but even if not void on its face, may be challenged because it is invalid as applied. *Whitney v. California,* 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095, overruled on other grounds (1928); *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Therefore, in order for the Phoenix zoning ordinance to be valid, it must not only be reasonable in time, place and manner, but also not arbitrary in operation. *Hill v. City of Manhattan Beach,* 6 Cal.3d 279, 98 Cal.Rptr. 785, 491 P.2d 369 (1971); *Walnut Properties, Inc. v. Long Beach City Council,* 100 Cal.App.3d 1018, 161 Cal.Rptr. 411 (1980).

We find that the current application of the Phoenix zoning ordinance is not arbitrary in operation. Appellant argues that § 417 was intended to protect residential concentrations and its application in this case would not achieve that objective. That statement may only be temporarily valid. We do not have independent knowledge and cannot take judicial notice that the land upon which the fairgrounds are located will be perpetually used for commercial enterprises. The location of the fairground is determined by the state. The city has no control over the eventual disposition of the property and it may be developed for residential purposes in the future. To follow appellant's reasoning would require the city to permit adult establishments within 500 feet of vacant lots or empty buildings zoned residential. This would place the city in the untenable position of being unable to institute long-range planning. Additionally, the presence of these establishments may impede planned residential development. It is not arbitrary for the city to protect areas it intends as residential in the future. The ordinance is constitutional as applied.

## IV. EQUAL PROTECTION

The Fourteenth Amendment of the United States Constitution provides that states are forbidden to deny any person within their jurisdiction equal protection of the laws. Appellant argues that the city only treats the fairground property as residentially zoned when applied to appellant. The gist of appellant's argument is that since the fairgrounds has been zoned residential, the city has permitted new non-conforming commercial uses such as the Phoenix Suns, ice shows, rock concerts, etc. Appellant ignores the nature of equal protection. It guarantees that persons in like circumstances and like conditions be treated equally. See e.g., *Hartford Steam Boiler Inspection & Insurance Company v. Harrison,* 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937). Appellant complains about others not similarly situated. The activities appellant complains of take place on the fairgrounds property in a residentially zoned area. Appellant is attempting to locate in a commercial zone and is being affected by the fairgrounds zoning. The constitution does not require situations which are different in fact to be treated as though they were the same. See e.g., *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). The equal protection clause does not apply to this situation. In any event, the uses complained of are protected nonconforming uses.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.