IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| PIMA COUNTY, a body politic and corporate, and PIMA COUNTY BOARD OF SUPERVISORS, | ) ) ) | 2 CA-CV 2005-0025 DEPARTMENT A |
| | ) | |
| | ) | O P I N I O N |
| Plaintiffs/Counterdefendants/ Appellants, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLEAR CHANNEL OUTDOOR, INC., formerly known as ELLER MEDIA, | ) ) | |
| | ) | |
| Defendant/Counterclaimant/ Appellee. | ) ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20022918

Honorable Richard S. Fields, Judge

REVERSED AND REMANDED

Barbara LaWall, Pima County Attorney
  By Christopher Straub and Amelia Craig Cramer
Tucson
Attorneys for Plaintiffs/ Counterdefendants/Appellants

Munger Chadwick, P.L.C.
  By John F. Munger and Evelyn Patrick Rick
Tucson
Attorneys for Defendant/ Counterclaimant/Appellee

Michael G. Rankin, Tucson City Attorney
  By Frank William Kern III and Dennis P.
  McLaughlin
                                         Tucson
              Attorneys for Amicus Curiae
                    City of Tucson

Arizona Center for Law in the Public Interest
  By Joy Herr-Cardillo
                                           Tucson
              Attorney for Amici Curiae
          Neighborhood Coalition of Greater
          Tucson, Sierra Club, Rincon Group,
              and Luz Social Services

George E. Silva, Santa Cruz County Attorney
  By Michael Massee
                                        Nogales
         Attorneys for Amici Curiae County
        Supervisors Association of Arizona and
                  Santa Cruz County

---

H O W A R D, Presiding Judge.

¶1        Appellant Pima County challenges the trial court's grant of summary judgment in favor of appellee Clear Channel Outdoor, Inc. Pima County claims the trial court erred by concluding that the billboards Clear Channel erected to replace billboards removed pursuant to condemnation were exempt from Pima County's building and zoning regulations and that Pima County was bound by issue preclusion because of a prior memorandum decision of this court. Because we conclude Clear Channel's billboards are not exempt from the regulations and Pima County is not bound by the prior decision of this court, we reverse the judgment.

¶2　　　　The parties stipulated to the following undisputed facts in support of their cross-motions for summary judgment. In 1998, the Arizona Department of Transportation (ADOT) initiated federally funded highway projects to widen the Interstate 10 freeway (I-10) and construct new frontage roads along it in Pima County. As part of these projects, ADOT condemned private property on both sides of I-10. Clear Channel owned billboards on several of the condemned parcels, which it was required to remove pursuant to the condemnation. In all, Clear Channel removed nine billboards.

¶3　　　　On April 24, 2001, ADOT and Clear Channel entered into a two-page settlement agreement regarding ADOT's acquisition or relocation during the condemnation of outdoor advertising signs owned by Clear Channel. The parties agreed that, in lieu of monetary damages, ADOT would convey unneeded portions of the condemned parcels to Clear Channel on which it could erect new billboards. ADOT also agreed it would "issue a license or permit for the overhang and/or encroachment, so long as the sign otherwise meets ADOT criteria." ADOT conveyed title to the remainder parcels to Clear Channel on October 26, 2001.

¶4　　　　Immediately following the transfer of title, Clear Channel erected three billboards on the remainder parcels and began erecting, but did not complete, a fourth billboard. The new billboards were larger in size, made of different materials, and were structurally different from the billboards that had been removed. Clear Channel erected the billboards without first obtaining the permits required by Pima County's zoning ordinance. The new billboards did not comply with Pima County building codes or zoning ordinances.

3

¶5        Pima County filed this action against Clear Channel, seeking a declaratory judgment, injunctive relief, and civil penalties, contending the new billboards violated various zoning ordinances and building codes. Clear Channel defended and counterclaimed, asserting that its billboards were not subject to Pima County's ordinances and that Pima County was prevented by collateral estoppel from asserting the billboards were illegal. Both parties moved for summary judgment. The trial court denied Pima County's motion, granted Clear Channel's, and entered judgment in its favor. We review a trial court's grant of summary judgment de novo. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998).

¶6        Pima County first argues that the trial court erred in concluding, based on the governmental function/proprietary function test, that Clear Channel is exempt from the County's zoning and building regulations.[1]  Pima County asserts both that Clear Channel is not entitled to the state's exemption from local regulations and that Clear Channel's use is a proprietary rather than a governmental function. Clear Channel counters that ADOT had a duty to pay Clear Channel just compensation and relocation assistance based on the condemnation. Clear Channel then reasons that the settlement agreement fulfilled the state's duty to compensate Clear Channel for the condemnation because the agreement provided for the transfer of title to the remainder parcels to it and allowed it to use the parcels for outdoor advertising. Clear Channel concludes that, because ADOT was acting

----

[1]Because we rule in Pima County's favor, we need not consider its argument that we should adopt the "modern" balancing of interests test.

4

in its governmental capacity when it entered into the settlement agreement, Clear Channel was entitled to the state's exemption from local zoning and building regulations in using the parcels.

¶7     The state is not subject to the general police power of local governments when it performs governmental functions. *Bd. of Regents v. City of Tempe*, 88 Ariz. 299, 309, 356 P.2d 399, 406 (1960). But this exemption is not a transferable property right. *See Alaska R.R. Corp. v. Native Vill. of Eklutna*, 43 P.3d 588, 597 (Alaska 2002). And it is generally limited to state entities and state agencies. *See Bd. of Regents*, 88 Ariz. at 311, 356 P.2d at 406; *Tovrea v. Trails End Improvements Ass'n*, 130 Ariz. 108, 109, 634 P.2d 396, 397 (App. 1981). A state agency is created only after the legislature delegates "the responsibility of performing a governmental function" to a particular entity. *Bd. of Regents*, 88 Ariz. at 309, 356 P.2d at 406.

¶8     Furthermore, under the governmental function/proprietary function test, the exemption from local regulations only applies when the state performs a governmental function. *See id.* Consequently, the state must comply with local regulations when it acts in a proprietary function. *Book-Cellar, Inc. v. City of Phoenix*, 150 Ariz. 42, 44, 721 P.2d 1169, 1171 (App. 1986). In *Book-Cellar*, this court held that, unless the activity is "a fundamentally inherent function of or encompassed within the basic nature of government," it is a proprietary function. *Id.* We then explained that operation of a fairgrounds did not constitute a fundamentally inherent function of the government because it was a competitive, commercial endeavor and was not funded by tax revenues. *Id.*

5

**¶9**　　　　Clear Channel does not claim it is a state agency. Furthermore, the erection and leasing of billboards is a commercial endeavor that directly competes with other commercial enterprises, is privately funded, and not something that can reasonably be considered fundamental or basic to the nature of government. Therefore, Clear Channel is not entitled to the state's exemption from local zoning because it is not an agency of the state, and in any event, it is seeking the exemption for a proprietary, not a governmental, function.

**¶10**　　　　At oral argument, Clear Channel maintained that the state exemption was not transferred to it, but rather, that the exemption arose from the state's use of the property to pay just compensation. Clear Channel focuses on the fact that the state transferred the remainder parcels to it to fulfill the state's duty to give Clear Channel just compensation in the condemnation action. *See* Ariz. Const. art. II, § 17. Clear Channel reasons, therefore, that ADOT "used" the remainder parcels to fulfill this obligation and, as such, that the parcels are exempt from local regulation. But the term "use" includes various concepts. The state's "use" of the remainder parcels to satisfy its obligation is a different concept from the state's "use" of its own real property in a physical sense. The cases Clear Channel cites for the principle that the state is exempt from local ordinances refer to the state's physical use of the state's property, which would normally be subject to local zoning and building codes. They do not address the application of local zoning and building codes after the state has conveyed the real property to a private third party. *See, e.g., Bd. of Regents; Book-Cellar.*

6

**¶11** At oral argument, Clear Channel also relied on *Kelo v. City of New London*, ___ U.S. ___, 125 S. Ct. 2655 (2005), and *Bailey v. Myers*, 206 Ariz. 224, 76 P.3d 898 (App. 2003), to support its contention that the state's "use" of property, which is exempt from local regulation, is not limited to physical "use." It argued that exempt state uses can include the payment of compensation and entitle a new owner to the same exemption from local regulation. But *Kelo* and *Bailey* addressed a completely different issue from the one presented here. The courts in those cases examined whether the governmental entity acts for a governmental purpose when it condemns private property so it can transfer the property to a private individual for development. *See Kelo*, ___ U.S. at ___, 125 S. Ct. at 2663-64; *Bailey*, 206 Ariz. 224, ¶ 2, 76 P.3d at 899. They did not address whether a private entity should be exempt from local zoning and building regulations. Furthermore, although Clear Channel claimed the cases were on point for this proposition, it could not provide the court with any authority indicating the private developers in those cases, who would have received the condemned private property, would have been exempt from local zoning and building regulations.

**¶12** Additionally, the settlement agreement does not indicate that ADOT attempted or intended to pass on to Clear Channel any sort of exemption from local regulations. Indeed, the agreement included the express condition that any encroaching signs "meet[] ADOT criteria." Furthermore, the required state permit applications specifically mandated that Clear Channel comply with local governmental regulations regarding outdoor advertising. No authority supports Clear Channel's contention that the transfer of a parcel

7

as part of a condemnation action is a sufficient reason to vest the state's exemption in the transferee.

¶13        Case law from other jurisdictions provides additional guidance on this issue. In *Nolan Brothers of Texas, Inc. v. City of Royal Oak*, 557 N.W.2d 925 (Mich. Ct. App. 1996), the plaintiff had an option to purchase the remainder of a previously condemned parcel for the purpose of building a commercial business on the property. *Id*. at 925. But, before the plaintiff bought the property, it was rezoned for residential use. *Id*. The plaintiff successfully contested the rezoning in the trial court on the ground the city was preempted from rezoning the property. *Id*. at 926. But the Michigan appellate court held that real property previously owned by the state and subsequently conveyed to a private party was not exempt from local zoning regulations.[2] *Id*. at 927. The court reasoned that "[t]o hold otherwise would allow private purchasers to circumvent the legislatively created zoning scheme." *Id*.

¶14        In *Village on the Hill, Inc. v. Massachusetts Turnpike Authority*, 202 N.E.2d 602 (Mass. 1964), a landowner contested a private party's commercial use of residentially zoned property. *Id*. at 604-05. The land at issue was the remainder of a parcel that had previously been condemned by the Massachusetts Turnpike Authority and that was offered to a private party for the purpose of relocating its manufacturing plant, which had also been condemned as part of the same project. *Id*. at 610-11. One issue on appeal was whether the

---

[2]Amicus curiae Neighborhood Coalition of Greater Tucson cites several cases supporting this proposition, including *Nolan Brothers*; *Village on the Hill*; and *State v. Stonybrook, Inc.*, 181 A.2d 601 (Conn. 1962).

8

Massachusetts Turnpike Authority's immunity from local zoning ordinances extended to land it owned that had become unnecessary to the state agency's primary function. *Id*. at 611. The court held that, "after the authority has conveyed in fee to private persons excess land formerly owned by it, such land does not remain exempt from zoning provisions because [it was] once owned by the authority." *Id.; cf. State v. Stonybrook, Inc.*, 181 A.2d 601, 604 (Conn. 1962) ("The sovereignty of the United States and its attendant immunity from state and local regulations end[s] with its sale of the property.").

¶15    Both *Nolan Brothers* and *Village on the Hill* held that an exemption does not run with real property after it is transferred. *See Nolan Bros*., 557 N.W.2d at 927; *Village on the Hill*, 202 N.E.2d at 611. Nevertheless, Clear Channel argues these cases are distinguishable from the present one and, as a result, are not helpful to its resolution. Unlike *Nolan Brothers* and *Village on the Hill*, Clear Channel contends the state used the transfer of the remainder parcels to satisfy its duty to provide just compensation. And, at oral argument, it urged that *Village on the Hill* is inapplicable to this case because the transfer of property there was to a party not involved in the condemnation. But, as we noted above, the state's exemption from local zoning and building ordinances applies to the state's physical use of its real property. It does not inherently pass to a private party when the state transfers the property. Accordingly, whether a transfer is to provide just compensation for condemnation or whether a transferee was involved in the condemnation are not facts that distinguish *Nolan Brothers* and *Village on the Hill* from this one.

9

**¶16** Clear Channel also contended at oral argument that *Nolan Brothers* involved property the state had owned for more than ten years. 557 N.W.2d at 925. But we fail to see how the length of state ownership is relevant to the general principle announced. Thus, because those cases are sufficiently analogous to the case before us, we find their reasoning helpful to its resolution.

**¶17** Clear Channel also makes the policy argument that, in transferring title to remainder parcels that are immune from local ordinances to satisfy its obligation in the condemnation action, the state saved money that could be better used elsewhere. However, the same policy argument, regarding the benefits of allowing the state to transfer real property free and clear of local regulations in a condemnation proceeding, would apply with equal force to other transfers. In many instances, the state could obtain a much higher price for its real property if it could transfer the property with immunity from the local government's regulations. The state could then use that additional money for salutary public purposes such as roads, prisons, universities, etc. But not even Clear Channel suggests that this would be good public policy. Therefore, this argument provides no compelling reason to recognize a distinction between real property transferred in a condemnation action and real property transferred in a voluntary sale for purposes of governmental immunity.

**¶18** We find the reasoning in *Nolan Brothers* and *Village on the Hill* persuasive. We hold that the state's governmental function exemption from local zoning and building regulations did not transfer to Clear Channel, which uses the property for commercial

billboards, when the state transferred real property to it as just compensation in a condemnation action.

**¶19**        *County of Santa Fe v. Milagro Wireless, LLC*, 32 P.3d 214 (N.M. Ct. App. 2001), on which the trial court relied in granting summary judgment in Clear Channel's favor, does not alter our conclusion.  The court in that case held that "county zoning ordinances cannot override the state's authority to regulate *the use of its own land*, whether the activity taking place on state land is pursued by the state or by a private entity with the state's approval." *Id*. at 216 (emphasis added).  Here, however, ADOT conveyed the parcels to Clear Channel.  As a result, Pima County is not attempting to regulate the state's use of its own land; rather, the County is attempting to regulate a private entity's use of its privately owned land for private gain.  Thus, the trial court's reliance on *Milagro* is misplaced, and we need not decide whether we would agree with that case if the same situation were presented here.

**¶20**        Both parties also rely on various statutes to support their positions.  Because the legislature has the authority to designate which entity has the power to regulate the land at issue, *see Board of Regents*, 88 Ariz. at 305, 356 P.2d at 403-04, we review the various statutes to determine if the legislature has, in fact, decided who should regulate the parcels.  Issues of statutory construction are reviewed de novo.  *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 8, 105 P.3d 1163, 1166 (2005).

**¶21**        Pima County claims the federal Highway Beautification Act of 1965 (FHBA), Pub. L. No. 89-285, 79 Stat. 1028 (codified as amended in scattered sections of 23 U.S.C.);

11

the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act (the Act), 42 U.S.C. §§ 4601-4655; the related federal acts and regulations; and the state statutes implementing those acts require that the relocated billboards on the parcels comply with local regulations and zoning ordinances. Pima County cites 23 U.S.C. § 131(g), 23 C.F.R. § 750.705(d), and 42 U.S.C. § 4601(D) in support. Section 131(g) of 23 U.S.C. requires that just compensation be paid for a billboard "lawfully erected under State law," while 23 C.F.R. § 750.705(d) states that an "illegal sign" must be removed expeditiously. Furthermore, 42 U.S.C. § 4601(7) defines a business for purposes of the Act as "any lawful activity." From these sections, Pima County concludes that the federal statutes require relocated businesses to comply with local ordinances.

¶22     Clear Channel, on the other hand, argues that, under the FHBA and applicable federal regulations, only state law controls which actions are lawful. *See* 23 U.S.C. § 131(d). But ADOT's permit forms contain the language: "This permit is issued subject to the condition that the permitee comply with local governmental regulations relating to outdoor advertising." Thus, in order to comply with controlling Arizona laws, parties must comply with local zoning ordinances. Although we disagree with Clear Channel's reasoning, we find the federal statutes and regulations unhelpful to Pima County. If Clear Channel's billboards are exempt from local regulations because Clear Channel possesses the state's exemption, the legality of the billboards would not be disputed.

¶23     Pima County's position, however, is supported, at least indirectly, by A.R.S. §§ 28-7901 through 28-7915, the Arizona Highway Beautification Act, in which Arizona

12

implemented the FHBA. Pima County cites those statutes for the proposition that the placement of outdoor advertising signs along highways is generally restricted, with some exceptions for "lawfully placed" signs. And an "illegal sign" is one erected in violation of state law. Ariz. Admin. Code R17-3-701(A)(1)(d). In *Libra Group, Inc. v. State*, 167 Ariz. 176, 805 P.2d 409 (App. 1991), this court interpreted the Arizona Highway Beautification Act in connection with local zoning ordinances. The issue in *Libra Group* was whether the Arizona Act preempted local zoning ordinances. *Id*. at 178-79, 805 P.2d at 411-12. We found that the issue of billboard regulation was a matter of both state and local concern. *Id*. at 180, 805 P.2d at 413. We also determined that the state had not intended to preempt local regulation of billboards. *Id*. Finally, we concluded that the legislature intended that local jurisdictions be able to impose more restrictive regulations than the state. *Id*. at 181, 805 P.2d at 414.

**¶24** Although *Libra Group* did not decide the precise question presented here, its reasoning is instructive. Exempting Clear Channel from local regulations because it received the parcels as compensation from the state would conflict with the legislature's intent that local jurisdictions retain the power to impose billboard regulations. Therefore, these statutes, as interpreted in *Libra Group*, support Pima County's position.

**¶25** Additionally, A.R.S. § 28-7048(A)(1) lends support to Pima County's position because it authorizes ADOT to lease "areas above or below state highways" to private persons, but only if the lease "is not in conflict with the zoning regulations of the local

13

government concerned."[3]  Clear Channel contends this statute is irrelevant because it pertains to leases while, here, the state conveyed title to the parcels to Clear Channel. Although we agree that the statute is not controlling on this issue, we believe it provides some additional guidance on Pima County's position that the legislature intends local controls to apply to state parcels sold to private entities.

¶26        Pima County also argues the trial court erred by finding the County is bound by issue preclusion based on the result in *City of Tucson v. Eller Media Co.*, No. 2 CA-CV 2000-0074 (memorandum decision filed Oct. 31, 2000).  We review the application of issue preclusion de novo.  *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, ¶ 8, 62 P.3d 966, 968 (App. 2003).  For issue preclusion to apply, the "issue or fact to be precluded must have been the same issue or fact actually litigated."  *City of Tucson v. Superior Court*, 165 Ariz. 236, 242, 798 P.2d 374, 380 (1990).  In *Eller*, we found the City of Tucson was not permitted to regulate the billboards Eller had placed on state land pursuant to its lease with the state.  Though both cases involve the issue of just compensation for billboards removed pursuant to condemnation, *Eller* is factually distinguishable from this case.  There, the compensation took the form of a lease on state-owned land for a particular purpose and for a limited amount of time.  Here, Clear Channel received title to previously condemned land

---

[3]Argued by amicus curiae City of Tucson.

as compensation for the billboards it was required to remove. Therefore, this case presents a different issue than *Eller*,[4] and issue preclusion does not apply.[5]

**¶27** For the foregoing reasons, the judgment is reversed, and this matter is remanded to the trial court for entry of judgment in favor of Pima County on the issues of Clear Channel's entitlement to the state's exemption and collateral estoppel and for further proceedings consistent with this decision.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge

_____
PETER J. ECKERSTROM, Judge

_____

[4]This case does not require us to decide whether we would reach the same conclusion reached in *Eller*, if the same issue is presented in a different case in the future.

[5]Because we determine that issue preclusion does not apply on this basis, we need not address Pima County's other arguments that it is not in privity with a party in *Eller* or that "offensive collateral estoppel" is not available against it because it is a governmental entity.