[Civil No. 1343.  Filed November 25, 1914.]

[144 Pac. 277.]

INSPIRATION CONSOLIDATED COPPER COMPANY, Appellant, v. NEW KEYSTONE COPPER COMPANY, Appellee.

1. EMINENT DOMAIN—CONDEMNATION—PRIVATE USE.—As concerns right to condemn for a tunnel through defendant's mining property from a shaft on one of plaintiff's two mining properties to a shaft on the other, for transportation of ore, the use is private; as the tunnel could be used by others only with plaintiff's consent.

2. EMINENT DOMAIN—NATURE OF POWER.—The right of eminent domain is inherent in sovereignty, and its exercise may be authorized by the legislature for private as well as public use, except as its power is limited by the state Constitution.

3. EMINENT DOMAIN—TAKING FOR PRIVATE USE—LIMITATION ON POWER. As regards authorizing condemnation for private use, Constitution, article 2, section 17, providing that private property shall not be taken for private use, except for certain purposes, merely limits the power of the legislature to the enumerated purposes, with the additional limitation, common to condemnation for a public use, that property shall not be taken without just compensation,

4. EMINENT DOMAIN—"PRIVATE WAY OF NECESSITY."—While "private ways of necessity" for which, under Constitution, article 2, section 17, the legislature may authorize condemnation, are not common-law ways of necessity, which are matters of grant, it is the province of the legislature, rather than the courts, to define them.

5. EMINENT DOMAIN—TAKING FOR PRIVATE USE—LEGISLATIVE AUTHORITY.—Though the legislature may, under Constitution, article 2, section 17, authorize condemnation for private use for certain purposes, power to condemn must be given by the legislature, so that power under Civil Code of 1913, paragraphs 3071–3097, being given to condemn only for public use, there can be no condemnation for a private use.

6. EMINENT DOMAIN — CONSTITUTIONAL PROVISIONS — "PUBLIC USE."— "Public use," as used in Constitutions prohibiting the taking of private property for public use without compensation, has acquired two meanings; one is user or right of use by the general public without the consent of the owner, and the other is public benefit or advantage.

[As to uses for which power of eminent domain cannot be exercised, see note in 102 Am. St. Rep. 809.  As to when the question of public use may be considered by courts, see note in 88 Am. St. Rep. 926.]

APPEAL from a judgment of the Superior Court of the County of Gila.  G. W. Shute, Judge.  Affirmed.

The facts are stated in the opinion.

Mr. Curtis H. Lindley and Mr. Edward W. Rice, for Appellant.

Messrs. Alderman & Elliott, for Appellee.

ROSS, J.—The appellant mining company, as shown by its complaint, is the owner of two groups of mines situate in the Globe Mining District, Gila county, Arizona, to wit, the Inspiration Group, consisting of 36 patented mines, and the Live Oak Group, consisting of 15 patented mines.  These mines are low-grade copper mines; the ores found in them containing an approximate average of 2 per cent copper. There has been disclosed in the Inspiration Group deposits of approximately 30,000,000 tons of copper ore of commercial grade, and in the Live Oak Group a deposit of approximately 15,000,000 tons of copper ore of commercial grade.  The appellant has purchased at great expense a mill or concentrator site for the treatment of ores from the two groups, and contemplates and intends to erect such mill or concentrator at a point about 1½ miles in a northeasterly direction from the Inspiration Group and approximately 2½ miles in same direction from the Live Oak Group.  Because of the low-grade ores found in said mines, it is necessary, in order to mine the same at a profit, to mine and treat the same in large quantities, and to that end the concentrator is to have an approximate capacity of 7,500 tons of ore daily.  The Inspiration Group and the Live Oak Group are entirely separated from each other by the mines of the appellee, New Keystone Copper Company.  The appellant has sunk shafts upon both groups and run tunnels or drifts through and across both groups up to the Keystone line.  It is alleged:

"That for the successful working of said Live Oak Group of mines and the utilization of said mill or concentrator it is necessary and indispensable that the plaintiff have a right of way across said Copper Hill claim (being one of the Keystone mines) and throughout the length thereof for the con-

struction, maintenance, and operation of a tunnel or drift 9 feet high and 11 feet wide; . . . that said Live Oak Group of claims have and will have great value because of their production of ores and metals, and that their further development and mining will contribute to the development of the mineral resources and the prosperity of the United States and of the state of Arizona; that the plaintiff is constructing said tunnel to enable it to develop and mine said Live Oak Group of claims, and that the construction thereof is necessary for said purposes, and the same is and will be a public use for and on behalf of which the plaintiff may exercise the right of eminent domain; that the taking of said property to the construction of said tunnel across said Copper Hill claim is necessary to such use and is authorized by law.''

A demurrer to the complaint was sustained upon the ground that the right of way for tunnel or drift sought to be condemned was to be devoted to a private use and not to a public use. The oral arguments of the learned counsel in their presentation of the case were devoted entirely to the one question as to whether the proposed use was private or public and their very elaborate briefs were given over to the same proposition, apparently upon the assumption that the solution of that question determined the case; it being conceded in the arguments that the use must be public to authorize condemnation. By an analysis of the facts, it is easily discovered that the tunnel asked for is for the private and individual use of the plaintiff. Both of its ends are perpendicular shafts on the private property of plaintiff and under its complete dominion. If the necessities of the case required its use by others, it could be used only upon consent of plaintiff. Public participation in the use of the tunnel in the sense that other mining companies might use it to transport their ores is precluded by the fact that it begins and ends on the plaintiff's property. Therefore, if user by the public is essential under our laws to constitute a public use, and if private property may be taken only for public use, the plaintiff must fail.

The Constitution of the United States (and most of the state Constitutions are modeled after it) provides that private property shall not be taken for public use without just compensation. The decisions of the courts under such Constitutions, as to the purposes for which private property may

be taken and as to what constitutes a public use, are not controlling in this state, and, indeed, lend us but little aid toward solving our problem. In the first place, it should be borne in mind that the right of eminent domain is an inherent right of sovereignty, and that the provisions found in the various Constitutions of the states defining eminent domain are restrictions and limitations upon the legislative department, and not the grant or extension of power to that department of government. In authorizing the taking of private property for private use, the legislative department of the government is therefore limited to the purposes named in the Constitution. The legislature may provide the modes and means of exercising the right thus defined by the fundamental law, and designate the persons and agencies authorized to exercise the right; but it cannot enlarge that right to include other private uses for which condemnation may be had. There is no limitation upon the sovereign's power to take private property for public use, except that just compensation shall be made. Constitutions that provide that private property shall not be taken for public use (except upon just compensation) have been uniformly construed, so far as we know, to prohibit by negation the taking of private property for private use. Under such Constitutions private property can be taken for public use only.

"Public use," instead of having a common definition, because of local conditions, has acquired at least two meanings; one is user or right of use by the general public without the consent of the owner, and the other is public welfare, or public benefit or advantage. These definitions have been adopted in the different jurisdictions as the local conditions and necessities demanded, and very properly so. For to give the words their popular meaning in the arid West would often mean the prevention of the reclaiming of desert areas there found or the development of other of its paramount resources, such as mining, lumbering or stock-raising. The strained or unnatural construction given the words in some jurisdictions have been imperative to the development and prosperity of the country. In other words, the exigencies of the cases were such as to require the courts to declare what was in fact a private use to be a public use; otherwise the right of eminent domain was denied, private enterprises

paralyzed, and natural resources left dormant. Such a strained construction disregards the plain intent of the Constitution that forbids by implication the taking of private property for private use; but no such necessity exists under our Constitution, for that instrument, in section 17, article 2, provides that:

"Private property shall not be taken for private use except for private ways of necessity, and for drains, flumes or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation. . . . "

This definition of the right of eminent domain found in our Constitution, if approved and followed, authorizes the law-making body to enact legislation providing for the condemnation of private property for private use, to wit, "private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, . . . purposes." Without such constitutional sanction or authority, Nevada, in *Dayton Min. Co.* v. *Seawall*, 11 Nev. 394, Utah, in *Nash* v. *Clark*, 27 Utah, 158, 101 Am. St. Rep. 953, 1 Ann. Cas. 300, 1 L. R. A. (N. S.) 208, 75 Pac. 371, and *Highland Boy Gold Min. Co.* v. *Strickley*, 28 Utah, 215, 107 Am. St. Rep. 711, 3 Ann. Cas. 1110, 1 L. R. A. (N. S.) 976, 78 Pac. 296, and the supreme court of the United States in *Clark* v. *Nash*, 198 U. S. 361, 49 L. Ed. 1085, 4 Ann. Cas. 1171, 25 Sup. Ct. Rep. 676, and *Strickley* v. *Highland Boy Gold Min. Co.*, 200 U. S. 527, 50 L. Ed. 581, 4 Ann. Cas. 1174, 26 Sup. Ct. Rep. 301, have decided that private property may be taken for private use in connection with irrigation and mining. It is true that such courts have indulged the fiction that a private use is a public use, simply because it was for the general welfare or of public utility or benefit, but this conceit, however pardonable, does not change the use from private to public. The fact is that the above cases hold that private property may be taken for private uses in the particular instances passed upon, and our Constitution in providing in certain cases that private property may be taken for private uses is in line with those decisions.

Lewis, in his work on Eminent Domain, third edition, section 315, page 595, says:

"The legislature of a state may not take, or authorize the taking of private property, except for public use, but the state itself, the people in their collective capacity, may take, or authorize the taking of private property for any purposes of public utility, or public welfare. . . . The policy of permitting private property to be taken for a particular purpose may promote the public welfare, though the purpose may not be a public use, as we have defined it. Just what purposes the public welfare will include will depend upon the ideas and needs and practices of the time. . . . At the present time there are at least three things which are deemed to promote the public welfare in such way and in such sense as to justify the exercise of the power of eminent domain, though the property taken is not devoted to the use of the public, but becomes the private property of the petitioner, as truly and completely as if he had purchased it by private contract. These three things are: (1) The reclamation of wet and arid lands; (2) the development and utilization of the mineral resources of the land; and (3) the development and utilization of water power. Wherever the local conditions are such that these improvements affect, in a material degree, the general prosperity and welfare of the state, there they become matters of such public concern as justifies the exercise of the eminent domain power to make them possible."

The Washington and Wyoming and Arizona Constitutions, so far as the present question is concerned, are so alike that any construction of the eminent domain provisions of their Constitutions by the former two states should be very persuasive to this court. The Wyoming court, in *Grover Irr. & Land Co.* v. *Lovella Ditch R. & Irr. Co.* (Wyo.), 131 Pac. 43, decided in April, 1913, reading at page 56, said:

"We are not required in this case to discriminate between a public use and a private use with reference to the taking of property under the power of eminent domain, for, whether our Constitution is to be understood as authorizing such taking for a use distinctly private, as distinguished from a public use, when the purpose thereof is irrigation, or as declaring that any taking for irrigation purposes is for a public use, it clearly authorizes a taking for such purpose. It is provided in the Constitution as follows: 'Private property shall not be taken for private use unless by consent of the owner,

except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation.' Article 1, section 32. 'Private property shall not be taken or damaged for public or private use without just compensation.' Article 1, section 33. It was said in Washington, referring to a provision like that contained in section 32: 'Here is an inference so strong as to amount almost to an affirmative declaration that private property may be taken for private use when the use is confined to the purposes enumerated in the provision, one of which is ditches on or across the land of others for agricultural purposes; and it is no strained construction of the provision to say that this includes ditches for irrigation purposes, in view of the vast extent of arid land within our state and the benefits of irrigation thereto in the increase of its productiveness and value. The very thought of agriculture in connection with this vast arid portion of our state suggests irrigation in connection therewith.' *State* v. *Superior Court,* 59 Wash. 621, 140 Am. St. Rep. 893, 110 Pac. 429. . . . A private use for any of the purposes mentioned in section 32 is given the same force and effect as a public use, and no greater.''

The eminent domain provisions of the Colorado Constitution and ours are very much the same. In *Lamborn* v. *Bell,* 18 Colo. 346, 20 L. R. A. 241, 32 Pac. 989, that court said:

''It is apparent from the foregoing provisions that our Constitution is, in certain particulars touching the right to take private property for private use, exceptional; and, for certain enumerated uses, changes the accepted rule that the use to which private property may be condemned must be public. The right of eminent domain is an exercise of sovereign power, and is generally conferred by legislative act; yet a constitutional provision that, in express terms, affirmatively confers the right for particular uses, is likewise an expression of the sovereign will, and grants the right as effectually as if expressed in an act of the legislature, and can be enforced when such grant is supplemented by an act of the legislature providing the means for its exercise.''

In other words, it is not the public or private character of the use to which the property is to be devoted that au-

thorizes its taking, but rather the public policy as announced in the Constitution, or, in the absence of constitutional limitation, as announced by the legislative body.

Now, our fundamental law, the collective act of all the people of the state, in plain and unmistakable language says that private property may be taken for certain private purposes, as for drains, flumes or ditches for mining and for private ways of necessity for mining. Drains, flumes or ditches are designed for use in getting water to or from the mines. They are possibly comprehensive enough to cover all the instrumentalities ordinarily used for ridding a mine of surplus water, or supplying a mine with water for power or domestic use. These terms are to be distinguished from "private ways of necessity," in that they are for water service, while the latter is descriptive of the various means of ingress and egress of travel and freight. It is used in the Constitution somewhat generically and might be made to include all the different kinds of private ways, commonly known and used in connection with modern mining.

In *Jones* v. *Venable,* 120 Ga. 1, 1 Ann. Cas. 185, 47 S. E. 549, it being an action to condemn a right of way for a private railroad across the lands of others to a business of quarrying granite or other stone, the court said:

"We grant the contention of the defendants in error that 'the enterprise of quarrying stone and marketing the same is purely private and one in which the public has no interest.' This being granted, the statute in question, as applied to this case, cannot be held to be constitutional upon the idea that property condemned under its provisions will be condemned for a public use. Can property, under the Political Code, section 650 et seq., be condemned for a private use? The Constitution of this state provides: 'In cases of necessity, private ways may be granted upon just compensation being first paid by the applicant.' Civ. Code, sec. 5729. If, then, the rights of way provided for in these sections of the Political Code are private ways, the power of the legislature to authorize their establishment under condemnation proceedings, in cases of necessity, cannot be questioned. The Constitution does not undertake to define private ways (nor does ours), or to limit the purposes for which they may be granted (nor does ours). The only limitation upon the power of the

legislature to provide for the granting of private ways is that they can only be granted in cases of necessity.''

So we conclude from our research that it is not necessary that the right of way for tunnel should be declared to be for a public use, before it could be taken as a private way of necessity, and the fact that our Constitution has provided that private property may be taken for private ways of necessity evidences an intention on the part of its framers to obviate a judicial finding or declaration to that effect.

The phrase ''private ways of necessity,'' as used in the Washington Constitution, was construed to have the common-law meaning in *Long* v. *Billings,* 7 Wash. 267, 34 Pac. 936, and *Healey Lumber Co.* v. *Morris,* 33 Wash. 490, 99 Am. St. Rep. 964, 63 L. R. A. 820, 74 Pac. 681. Such a construction was not justified. Private ways of necessity, under the common law, were always the subject matter of contract, either express or implied. They rested in grant, as incidental, and necessary to, the proper enjoyment of the principal estate. The Constitution has undertaken to provide for ways other than common-law ways. There was no occasion to provide for common-law ways of necessity, for the manner of their acquisition was well-known and understood. To accommodate industrial expansion and encourage and facilitate a full utilization of the natural resources of the country, the Constitution provided for the acquisition of means of ingress and egress to mineral deposits and to water sources, not recognized at common law; the theory being that private ownership must in the particulars named give way to the common good. The view we have taken is fully sustained by a later decision of the Washington supreme court, to wit, *State* v. *Superior Court* (decided January 24, 1914), 77 Wash. 585, 137 Pac. 994. In this case a timber company sought to condemn a right of way for a logging road over and across private lands, in order that it might convey its timber from lands owned by it to its sawmill and could not secure right of way except by condemnation. In the opinion many of the earlier Washington cases are adverted to, but their reasoning is not followed nor their conclusions adopted in whole. Indeed, the decision marks a new mile-post in the law of eminent domain and its administration in the state of Washington under a Constitution like ours. The court sustained

the application for condemnation of right of way and boldly announced that private property could be taken for a private use under the Constitution and laws of that state. The court said, quoting from an earlier case:

" 'The right of property is a legal right and not a natural right, and it must be measured always by reference to the rights of others and the public.' If this be true, then there can be no universal law which, in the absence of constitutional restrictions, forbids a state from providing for the condemnation of private ways of necessity in the furtherance of the development of its material resources."

It was accordingly held that an act of the legislature defining "private ways of necessity" to "mean and include a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through which timber, stone, minerals or other valuable materials and products may be transported and carried" as constitutional, saying:

"We think the legislature acted within its constitutional powers in defining a private way of necessity and establishing the procedure for making the right available. As defined, it is promotive of the public welfare, in that it prevents a private individual from bottling up a portion of the resources of the state."

Lewis on Eminent Domain, third edition, section 367, says:

"This power [eminent domain], with all its incidents, is vested in the legislatures of the several states by the general grant of legislative powers contained in the Constitution. From this it follows: First, that the power can only be exercised by virtue of a legislative enactment; second, that the time, manner and occasion of its exercise are wholly in the control and discretion of the legislature, except as restrained by the Constitution. 'It lies in its discretion to determine to what extent, on what occasions, and under what circumstances this power shall be exercised.' "

Our Constitution does not define "private ways of necessity," nor has the law-making body defined the expression. While, as above stated, we are of the opinion that it is used

in the Constitution somewhat generically, and therefore includes all necessary private ways, we think it is the province of the legislature, rather than the courts, to define the words. The power to appropriate private property to the use of another, whether public or private, lies dormant in the state until the legislature authorizes its use, designates agents, prescribes the purposes and extent of use. In other words, before this sovereign power of the state may be exercised, he who claims the right must point out the modes, conditions and agencies of appropriation as fixed and granted by legislative expression. As was said in *Tacoma* v. *State,* 4 Wash. 64, 66, 29 Pac. 847:

"The exercise of the power of eminent domain is so high and peculiar a thing that nothing less than an act of the legislature of a state can support it, and that act must not only confer the power, but prescribe the method by which it is to be done."

The same decision quotes Judge Cooley's language approvingly:

"The right to appropriate private property to public uses lies dormant in the state, until legislative action is had, pointing out the occasions, the modes, conditions and agencies for its appropriation."

Under the provisions of title 13, Civil Code of 1913 (pars. 3071–3097), private property may be taken for public uses only. In that title, the law-making body of the state has defined "eminent domain" as the right of the people or government to take private property for public use, and has prescribed the manner in which the right may be exercised. As the tunnel site here sought to be condemned is clearly for the individual uses and purposes of the appellant for the profitable mining and milling of its private ores, it is indispensably essential that the legislature authorize its condemnation by direct and unambiguous language before the court could entertain this proceeding. The law-making body has not defined a tunnel such as the one here desired as private way of necessity, and therefore the power of condemnation in this instance lies dormant. The constitutional provision to the effect that private property may be condemned for private ways of necessity not having been supplemented by proper

legislation defining what "private ways of necessity" are, the judgment of the trial court must be affirmed.

The order of the lower court is affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Concurring Specially.—I concur in the order affirming the judgment of the lower court. My reasons for so concurring in that order, briefly stated, are because the allegations of the complaint show that the purpose for which the right of way is sought to be taken is clearly for a private use and not a public use, and therefore an act of taking for the purposes alleged would clearly be an unconstitutional exercise of the right of eminent domain. Section 17, art. 2, Constitution.

In determining the question of what is a public use, Mr. Justice Cooley (Const. Lim., p. 532) says:

"The reasons of the case, and the settled practice of free governments, must be our guides in determining what is, or is not, to be regarded a public use; and that only can be considered such where the government is supplying its own needs, or is furnishing facilities for its citizens in regard to those matters of public necessity, convenience or welfare, which, on account of their peculiar character, and the difficulty—perhaps impossibility—of making provision for them otherwise, it is alike proper, useful and needful for the government to provide."

Many cases have negatively stated the rule by which the courts may determine whether a given use is public or private, but leave the matter open to modification whenever local circumstances make a change necessary. The supreme court of Minnesota in the case of *Minnesota Canal & Power Co.* v. *Koochiching Co.*, 97 Minn. 429, 7 Ann. Cas. 1182, 5 L. R. A. (N. S.) 638, 107 N. W. 405, states such rule thus:

"A use is not public unless the public, under proper police regulation, has the right to resort to the property for the use for which it is acquired independently of the mere will or caprice of the person or corporation in which the title of the property would vest upon condemnation."

To the same effect are the following cases: *Brown* v. *Gerald*, 100 Me. 351, 109 Am. St. Rep. 526, 70 L. R. A. 472, 61 Atl. 785; *Gaylord* v. *Sanitary Dist.*, 204 Ill. 576, 98 Am. St. Rep.

235, 63 L. R. A. 582, 68 N. E. 522; *Coates* v. *Campbell,* 37 Minn. 498, 35 N. W. 366; *Board of Health* v. *Van Hoesen,* 87 Mich. 533, 14 L. R. A. 114, 49 N. W. 894; *Fallsburg Power & Mfg. Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855, 61 L. R. A. 129, 43 S. E. 194; *Cozard* v. *Kanawha Hardwood Co.,* 139 N. C. 283, 111 Am. St. Rep. 779, 1 L. R. A. (N. S.) 969, 51 S. E. 932; *Healy Lumber Co* v. *Morris,* 33 Wash. 490, 99 Am. St. Rep. 964, 63 L. R. A. 820, 74 Pac. 681; *In re New York,* 135 N. Y. 253, 31 Am. St. Rep. 828, 31 N. E. 1043; *Ulmer* v. *Lime Rock R. Co.,* 98 Me. 579, 66 L. R. A. 387, 57 Atl. 1001; *Howard Mill Co.* v. *Lumber Co.,* 77 Kan. 599, 18 L. R. A (N. S.) 356, 95 Pac. 559; *Lake Koen Nav. Res. & Irr. Co.* v. *Klein,* 63 Kan. 493, 65 Pac. 687. I consider these authorities of controlling weight upon the question. Many others can be cited, such as Lewis on Eminent Domain and the cases cited therein, and Cooley's Constitutional Limitations and the cases cited therein. More specific references need not be given in this kind of opinion.

I consider that no other question is involved in this appeal, and a decision of that question disposes of the cause. I therefore concur in affirming the judgment.

NOTE.—On the question of the right to exercise the power of eminent domain for right of way for mining tunnel, see note in 4 L. R. A. (N. S.) 106. And as to the right to exercise the power of eminent domain for a mining road, see notes in 1 L. R. A. (N. S.) 977 and 22 L. R. A. (N. S.) 701.