76 P.3d 898

Randall E. BAILEY and Melissa M. Bailey, husband and wife, Dale I. Bailey and Janet L. Bailey, husband and wife, Petitioners,

v.

The Honorable Robert D. MYERS, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

City of Mesa, a municipal corporation, Real Party in Interest.

No. 1 CA–SA 02–0108.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 1, 2003.

Institute for Justice, Arizona Chapter By Timothy D. Keller, Thomas P. Liddy and Clint Bolick, Phoenix, Attorneys for Petitioner.

Mesa City Attorney's Office By Joseph Padilla and Nancy E. Campbell, Mesa, Attorneys for Real Party In Interest.

## OPINION

GEMMILL, Judge.

¶ 1 Randall E. Bailey, Melissa M. Bailey, Dale I. Bailey, and Janet L. Bailey operate a family business known as Bailey's Brake Service on property they own in the City of Mesa ("City"). The Baileys seek special-action relief from the trial court's ruling that the City's condemnation of the Bailey property for a redevelopment project is constitutional and that the City is entitled to immediate possession of the property. The Baileys argue that their property is being taken for a "private use" rather than a "public use" as required by the Arizona Constitution and that the trial court failed to properly apply the required constitutional analysis of private-versus-public use.

¶ 2 This court previously issued an order accepting jurisdiction and stating that this written decision would follow. We now grant relief, vacate the trial court's order of immediate possession, and remand for entry of judgment in favor of the Baileys. We hold that Article 2, Section 17 of the Arizona Constitution prevents the City from taking the Baileys' property for this redevelopment project because the ultimate use of the property is not a "public use."

## FACTS AND PROCEDURAL HISTORY

¶ 3 For many years, the Bailey family has operated Bailey's Brake Service on property they own near the northwest corner of the intersection of Main Street and Country Club Drive in Mesa. In 1996, the Mesa City Council adopted a resolution establishing the boundaries of the Mesa Town Center Redevelopment Area ("Town Center"). The boundaries of the Town Center did not initially encompass the Baileys' property.

¶ 4 The owner of a nearby Ace Hardware store, Ken Lenhart, contacted the City's redevelopment office and expressed a desire to expand and relocate his hardware store to the northwest corner of Main Street and Country Club Drive. Lenhart proposed that the area be redeveloped. After further study, the Mesa City Council passed resolutions in 1999 expanding the boundaries of the

Town Center redevelopment project to include the Baileys' property within a 5.22 acre area designated as Site 24.

¶ 5 The City issued a Request for Proposals for the redevelopment of Site 24. After receiving three proposals, the City awarded the redevelopment project jointly to Lenhart and Palm Court Investments. Randall Bailey approached Lenhart and asked to have Bailey's Brake Service included in the redevelopment project but to no avail.

¶ 6 The proposed redevelopment of Site 24 envisions the construction of a large retail center with stores, offices and restaurants. The land owned by the Baileys would be combined with other parcels, and a new hardware store would be located on the northwest corner of Main Street and Country Club Drive. This redevelopment is intended to provide an attractive and revitalized "gateway" to the downtown area. In the memorandum of understanding between the City and the two developers, the City is obligated to, among other responsibilities, "provide the necessary acquisition, relocation and demolition costs required to assemble properties required for the Project development." The acquired property is to be conveyed to the two developers for the redevelopment project.

¶ 7 The City filed a condemnation action against the Baileys, seeking to take the property upon which Bailey's Brake Service is operated. The Baileys counter-claimed, alleging that the proposed taking violates Article 2, Section 17 of the Arizona Constitution. The City moved for an order of immediate possession. Following an evidentiary hearing, the trial court ruled that the City's exercise of eminent domain to acquire the Baileys' property was constitutional, and the court entered an order granting immediate possession to the City. At the request of the Baileys, the court stayed the order of immediate possession to allow this special action to be filed.

## JURISDICTION

¶ 8 We accepted special-action jurisdiction in this case for several reasons. The Baileys' only adequate remedy is through special action. *See Rogers v. Salt River Project Agric. Improvement & Power Dist.,* 110 Ariz. 279, 280, 517 P.2d 1275, 1276 (1974)

(interlocutory order of immediate possession is not appealable); *Cordova v. City of Tucson,* 15 Ariz.App. 469, 471, 489 P.2d 727, 729 (1971) ("Although no rights of appeal exist, judicial intervention by way of special action may be available to avoid the serious economic waste which would result from a long drawn-out trial when the condemning authority has no right to condemn the land in question."). Also, enforcement of the trial court's order of immediate possession may cause irreparable harm—the destruction of a privately owned family business. *See State ex rel. McDougall v. Superior Court,* 188 Ariz. 147, 148, 933 P.2d 1215, 1216 (App.1996) (threat of irreparable harm supports acceptance of special-action jurisdiction). Finally, this dispute presents an issue of first impression and of statewide importance. *See Haas v. Colosi,* 202 Ariz. 56, 57, ¶ 2, 40 P.3d 1249, 1250 (App.2002) (special-action jurisdiction appropriate in cases of first impression and statewide importance).

## PRIVATE–VERSUS–PUBLIC USE

¶ 9 The City is attempting to exercise its power of eminent domain to take the Bailey property and package it with adjacent parcels of land for sale to private developers who intend to build retail, office, and restaurant facilities. The Baileys argue that this taking of their property is for a private use in violation of Article 2, Section 17 of the Arizona Constitution, which provides:

> *Private property shall not be taken for private use,* except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use without just compensation having first been made ... which compensation shall be ascertained by a jury, unless a jury be waived .... *Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public.*

(Emphasis added.)

¶ 10 The Baileys contend that this section of our Constitution prohibits the taking of

private property for "private use," with exceptions not applicable here, and allows the government to take property only for uses that are "really public." Because the City's redevelopment project, if implemented, will take the Bailey property and convey it to private developers to build a large retail center, the Baileys argue that this future use is private and not "really public" and therefore prohibited by the Constitution. The City responds that the public will benefit from this redevelopment because a portion of the downtown area will be revitalized, creating an attractive "gateway" to downtown Mesa; substantial aesthetic enhancement will be achieved; property values will increase; jobs will be created; and tax and utility revenues will increase. These public benefits, argues the City, are sufficient to satisfy the "public use" requirement.

¶ 11 Resolution of this dispute requires analysis of the significant limitations on the power of eminent domain provided by Article 2, Section 17 of the Arizona Constitution. The framers of our Constitution understood that one of the basic responsibilities of government is to protect private property interests. The Constitution contains no language suggesting that protection of such interests from an improper exercise of eminent domain is any less important, or less fundamental, than the other rights protected in the Constitution.

■ ¶ 12 The first sentence of Article 2, Section 17 limits the taking of private property for private use: *"Private property shall not be taken for private use,* except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes." (Emphasis added.) Taking one person's property for another person's private use is plainly prohibited, with a few specific exceptions not applicable here. *See Inspiration Consol. Copper Co. v. New Keystone Copper Co.,* 16 Ariz. 257, 260, 144 P. 277, 278 (1914) ("In authorizing the taking of private property for private use, the legislative department of the government is therefore limited to the purposes named in the Constitution.").

■ ¶ 13 The third sentence of Article 2, Section 17 establishes that the determination of private-versus-public use is a judicial question, not a legislative determination: "Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be *really public* shall be a *judicial question,* and determined as such *without regard to any legislative assertion that the use is public."* (Emphasis added.) This language underscores the intended protection against the taking of private property for uses that are not "really public," even when the condemning authority has declared that the taking is necessary for the public benefit.

■ ¶ 14 By challenging whether the proposed taking of their property is for a "public use," the Baileys invoked their constitutional right to a judicial determination whether the proposed use is "really public." The trial court, in reaching its decision approving the condemnation of the Baileys' property, either failed to conduct the constitutionally required independent analysis of private-versus-public use or applied the wrong standard of review in doing so. The standard of review mentioned in the trial court's order is the deferential standard of review for the statutory issue of "necessity."[1] The order does not

---

1. The constitutional requirement of "public use" differs from the statutory requirement of "necessity." *See City of Phoenix v. Superior Court,* 137 Ariz. 409, 411–12, 671 P.2d 387, 389–90 (1983). The requirement of necessity is derived from Arizona Revised Statutes sections 12–1112, 1116(H) (2003). While both public use and necessity are required for the exercise of eminent domain, different standards of judicial review are applicable to each requirement. An independent judicial review is required by our Constitution regarding public use, and a deferential standard of review is applied to the question of necessity.

*See City of Phoenix,* 137 Ariz. at 412, 671 P.2d at 390. The City cites *Humphrey v. City of Phoenix,* 55 Ariz. 374, 384, 102 P.2d 82, 86 (1940) for the proposition that legislative declarations of public use are not conclusive but are to be given "great weight" not only on the issue of necessity but also the constitutional issue of public use. Although the court in *Humphrey* did state that legislative declarations of public use are of "great weight," the court did not explain how this could be so in light of the constitutional mandate that public use must be determined by the court "without regard to any legislative as-

demonstrate that the court conducted the independent review required by Article 2, Section 17.

¶ 15 There is no mechanical formula for determining "public use." This issue must be decided on a case-by-case basis. *See Citizens Utilities Water Co. v. Superior Court,* 108 Ariz. 296, 299, 497 P.2d 55, 58 (1972).

¶ 16 When the government proposes to take a person's property to build streets, jails, government buildings, libraries or public parks that the government will own or operate, the anticipated use is unquestionably public. On the other hand, if the government proposes to take property and then convey it to private developers for private commercial use, a significant question is presented because of the intended disposition of the property.

¶ 17 The Baileys, relying on Article 2, Section 17, argue that the proposed use in this case is simply a private use because their property, if allowed to be taken, will ultimately be owned by private developers and put to private commercial use. No further inquiry is needed, according to the Baileys. The City, on the other hand, relies primarily on two Arizona Supreme Court cases, *City of Phoenix* and *Citizens Utilities Water Company,* to argue that taking the Baileys' property is an authorized public use because the public will benefit, even though the property will be conveyed to private developers for ordinary commercial use.

¶ 18 In *City of Phoenix,* our supreme court stated that a taking of a slum or blighted property for redevelopment may be a "public use" even if conveyed to a private person for operation of a private business:

It is generally accepted, however, that the taking of property in a so-called slum or blighted area for the purpose of clearing and "redevelopment," including sale before or after reconstruction to a private person

or entity for operation of a public or private business, is a "public use."

137 Ariz. at 411, 671 P.2d at 389. This statement must be understood in context, however. The ultimate issues before the supreme court in *City of Phoenix* were whether the property in question was located within a slum or blighted area and whether the trial court had applied the proper standard of judicial review to make that determination. *Id.* at 410, 671 P.2d at 388. Constitutional "public use" was not squarely at issue. The trial court had ruled that the property in question was not part of a slum or blighted area and on that basis had denied the immediate possession sought by the City of Phoenix. *Id.* at 412, 671 P.2d at 390. The supreme court took the occasion to distinguish between the constitutional issue of private-versus-public use and the statutory issue of necessity, *id.* at 411–12, 671 P.2d at 389–90, and then held that the determination whether a parcel is within a slum or blighted area is analogous to the question of necessity and is therefore to be reviewed deferentially. *Id.* at 413, 416, 671 P.2d at 391, 394. Applying the deferential standard of review, the supreme court ruled that the City of Phoenix was entitled to proceed with its condemnation of the property at issue. *Id.* at 416, 671 P.2d at 394. Based on the language of Article 2, Section 17 and the precise issues resolved in *City of Phoenix,* we cannot conclude that our supreme court was decreeing that any property within a designated slum or blighted area is automatically subject to being taken for redevelopment without the constitutionally required judicial determination that the property is being taken for a use that is "really public." [2]

¶ 19 In *Citizens Utilities Water Company,* the supreme court upheld the condemnation of a water company by the City of Tucson, including the company's properties that were outside the city, unconnected with facilities that served the city, and not used to serve

---

sertion that the use is public." Ariz. Const. art. 2, § 17. In the more recent case of *City of Phoenix,* the supreme court recognized the distinction between the "public use" determination (made "without regard to any legislative assertion that the use is public") and the "necessity" determination ("great weight" given to legislative

assertions). 137 Ariz. at 411, 671 P.2d at 389. We believe that *Humphrey* has been clarified by *City of Phoenix,* and we follow the more recent case.

**2.** No formal findings of slum or blight have been made specifically regarding Site 24.

Tucson residents. 108 Ariz. at 297, 299, 497 P.2d at 56, 58. The water company argued that the taking of its properties outside the city was not for "public use" because members of the public outside the city limits would not have the legal right to enjoy or use the property. *Id.* at 298, 497 P.2d at 57. In response, the court first noted that "merely because the city is acting in its private capacity does not mean that the water is not being used for a public purpose." *Id.* (italics in original omitted). The court added that the "untrammeled right to use the property to be condemned, then, is clearly not the criterion of whether the use to be made is a public one." *Id.* (italics in original omitted). Although the court spoke in broad terms regarding public use, the facts in *Citizens Utilities Water Company* readily supported a finding of public use. Unlike our present dispute in which the property being condemned will become part of a privately owned retail center, the waterworks condemned by the City of Tucson were intended to remain under city ownership and water would be widely distributed to the public.[3]

■ ¶ 20 The City also relies on two United State Supreme Court cases, *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) and *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Although these federal cases may be persuasive on the issue of necessity, they provide no guidance in the determination of private-versus-public use under the Arizona Constitution. The federal constitution provides considerably less protection against eminent domain than our Constitution provides. As our supreme court recognized shortly after statehood, decisions based on the federal constitution and most state constitutions regarding "the purposes for which private property may be taken and as to what constitutes a public use, *are not controlling in this state, and, indeed, lend us but little aid*" in applying Article 2, Section 17. *Inspiration Consol. Copper Co.*, 16 Ariz. at 259–60, 144 P. at 278 (emphasis added).

¶ 21 In light of *City of Phoenix* and *Citizens Utilities Water Company*, we agree with the City that the mere fact that the property being taken will ultimately be conveyed to a private party does not, by itself, dictate a conclusion that the use is private and not public. We do not agree with the City, however, that these cases are dispositive of the issue of "public use" in this dispute. If the language of Article 2, Section 17 means what it says, then it follows that when a proposed taking for redevelopment is challenged on the basis that the taking is for private rather than public use, the anticipated public benefits or advantages from the proposed redevelopment must be carefully scrutinized against the backdrop of this constitutional language. Not every combination of perceived public benefits and advantages will satisfy the "public use" requirement of our Constitution. *See Inspiration Consol. Copper Co.*, 16 Ariz. at 261, 144 P. at 279 ("It is true that [some] courts have indulged the fiction that a private use is a public use, simply because it was for the general welfare or of public utility or benefit, but this conceit, however pardonable, does not change the use from private to public.").

¶ 22 In addition to our independent analysis of Article 2, Section 17, we also recognize that this constitutional language was derived from and is nearly identical to a provision in the Washington Constitution, and our su-

---

**3.** The City points out that the *Citizens Utilities Water Company* court also quoted with approval the following sentence from the pre-statehood case of *Oury v. Goodwin*, 3 Ariz. 255, 272, 26 P. 376, 382 (1891): "In a great number of these instances there is no participation by the general public, and the public use consists in the purely incidental benefits." 108 Ariz. at 299, 497 P.2d at 58. We do not find the City's reliance on these words from the territorial supreme court to be persuasive. *Oury* was decided before the adoption of our state constitution, and there was no constitutional or statutory provision comparable to Article 2, Section 17. The *Oury* court, therefore, was not addressing the private-versus-public use issue now framed by our constitution. Also, the dispute was quite different. The court in *Oury* approved the condemnation of property for a canal or ditch for irrigation purposes, and the quoted sentence constitutes part of a broad discussion regarding the public benefits derived by allowing private use of eminent domain to assist the development of the natural resources of various states in the nineteenth century. 3 Ariz. at 272, 26 P. at 382. Finally, because the *Oury* court deferentially reviewed the challenged taking, *id.* at 276, 26 P. at 383, its analysis is more applicable to the issue of necessity under our current law than to the constitutional issue of public use.

preme court has long held that decisions from that state, although not controlling, are quite persuasive. *See Solana Land Co. v. Murphey*, 69 Ariz. 117, 124, 210 P.2d 593, 597 (1949); *Cienega Cattle Co. v. Atkins*, 59 Ariz. 287, 292, 126 P.2d 481, 483 (1942). The Washington Supreme Court has "consistently held that 'a beneficial use is not necessarily a public use.' " *Manufactured Housing Communities of Washington v. State*, 142 Wash.2d 347, 13 P.3d 183, 189 (2000) (citations omitted). We agree.

¶ 23 Based on the language of the first and third sentences of Article 2, Section 17, see ¶¶ 12–13 *supra*, we hold that when a proposed taking for a redevelopment project will result in private commercial ownership and operation, the Arizona Constitution requires that the anticipated public benefits must substantially outweigh the private character of the end use so that it may truly be said that the taking is for a use that is "really public." The constitutional requirement of "public use" is only satisfied when the public benefits and characteristics of the intended use substantially predominate over the private nature of that use.

¶ 24 There are many factors that may be considered in evaluating the private or public character of the intended use of property. For example, for what purpose or purposes will the property be used? Will title to the property be held by a public entity? If one or more private parties will own or lease the property, will the property be used for private profit, non-profit or public purposes? Will the end use of the property provide needed public services? What degree of control will the condemning authority retain over the use of the property? What are the anticipated public uses or benefits? What is the ratio of public to private funds to be expended for the redevelopment? Will the community as a whole benefit or only a few of its members? Who stands to gain most by the taking, private parties or the public?

Are private developers the driving force behind the redevelopment project? Is profit the overriding motivation? Are there public health or safety issues involved? Is there a true slum or blight to be removed? Is the property to be taken unique? To what extent, if any, will the proposed taking result in loss, detriment, or harm to members of the community? How necessary is the property to the achievement of the public purposes? [4] Do the anticipated public purposes or benefits outweigh the private purposes or benefits of taking the property? Has the protection afforded private-property owners under Article 2, Section 17 been fully considered? [5]

¶ 25 Applying these factors, we conclude as a matter of law that the City did not carry its burden of proving a "public use." The City does not propose to take the Baileys' property for a traditional public use such as a street, park, or governmental building. Nor is this taking essential for the provision of public services or for reasons of public safety or health. Instead, the completion of this redevelopment project will result in the property becoming part of a privately owned retail center with stores, restaurants, and office space.

¶ 26 Because Article 2, Section 17 allows such a taking only when the public characteristics or benefits of the intended use substantially outweigh the private nature of that use, this proposed taking of the Baileys' property does not satisfy the "public use" requirement of the Arizona Constitution. The intended use of the property is fundamentally for private development. The developers and other private parties would be the primary beneficiaries rather than the public. The anticipated benefits to the public do not outweigh the private nature of the intended use.

### CONCLUSION

¶ 27 Article 2, Section 17 prevents the condemnation of the Baileys' property for this redevelopment project.[6] We therefore

4. Although the issue whether the property is being taken for a constitutionally acceptable public use is a separate inquiry from the statutory requirement of necessity, the court in considering a challenged "public use" must evaluate the anticipated public benefits and in that sense the necessity of the taking is an appropriate factor in the constitutional analysis.

5. This list of factors is illustrative, not exhaustive.

6. Because we resolve this dispute on this basis, we do not reach the Baileys' alternative argument that several Mesa City Council members who voted for this condemnation may have had conflicts of interest.

vacate the trial court's order of immediate possession and remand for entry of judgment in favor of the Baileys.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge and CECIL B. PATTERSON, JR., Judge.