BOLICK, J., concurring in part and dissenting in part.
 

 ¶30 I agree with the majority that the Arizona Corporation Commission has no authority "to regulate the condemnation of water utilities," the narrow question the City presented to us on special action review, and that the City has standing to pursue the action. However, the Court goes further to divest the Commission of authority to protect the interests of water consumers in the event the transfer of the water utility here is actually a voluntary transaction dressed up as an exercise of eminent domain.
 

 ¶31 The majority correctly identifies the usual dividing line regarding which governmental acquisitions of private water facilities
 require Commission approval: if they are voluntary transactions, they do; if they are involuntary transactions effectuated through eminent domain, they do not. Unfortunately, the majority ignores the more difficult question that may be presented here: what happens when the acquisition is voluntary
 
 and
 
 consummated through eminent domain? The majority holds that the moment a municipality announces its intention to use eminent domain, the Commission's authority to protect water consumers dissolves. I cannot join that holding for it elevates form over substance and defeats important statutory objectives underlying the Commission's jurisdiction.
 

 ¶32 I wish I could share the majority's certitude that this scenario is resolved through clear statutory language. But neither the statutes creating the Commission's authority to protect water consumers nor those pertaining to a municipality's eminent domain authority speak directly to this circumstance.
 

 ¶33 When two sets of statutes address a situation, we should endeavor to harmonize them and give effect, if possible, to all the provisions.
 
 State v. Bowsher
 
 ,
 
 225 Ariz. 586
 
 , 589 ¶ 14,
 
 242 P.3d 1055
 
 , 1058 (2010). The majority suggests that, because several other statutes deal with the issue of condemnations generally, it is necessary to rewrite A.R.S. § 40-285(A) for it to have any effect in this circumstance.
 
 See
 

 supra
 
 ¶¶ 19, 24, 28. To the contrary, the eminent domain statutes and the Commission's authorizing statute can both apply here.
 

 ¶34 Under § 40-285(A), the Commission possesses authority over a public service company when it "sell[s], lease[s], assign[s], mortgage[s] or otherwise dispose[s] of" its system. The term "otherwise dispose of" is broad enough to encompass a transfer through eminent domain that is the product of voluntary agreement. Indeed, broad general terms, like "otherwise dispose of," must be "accorded their full and fair scope" and may not be "arbitrarily limited." Antonin Scalia & Bryan A. Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 101 (2012). By refusing to recognize "otherwise dispose of" as including a voluntary transfer by eminent domain, the majority ignores the term's expansive breadth and arbitrarily creates an ad hoc exception.
 
 See
 

 Phillips v. O'Neil
 
 ,
 
 243 Ariz. 299
 
 , 302 ¶ 11,
 
 407 P.3d 71
 
 , 74 (2017) (applying general terms canon and noting that courts should not create "ad hoc exceptions" to otherwise broad, general terms (quoting Scalia & Garner,
 
 supra
 
 , at 101)). Moreover, while the majority invokes the
 
 noscitur a sociis
 
 canon, it rejects where the canon leads. The
 
 noscitur a sociis
 
 canon suggests "words grouped in a list should be given related meanings." Scalia & Garner,
 
 supra
 
 , at 195 (quoting
 
 Third Nat'l Bank in Nashville v. Impac Ltd.
 
 ,
 
 432 U.S. 312
 
 , 322,
 
 97 S.Ct. 2307
 
 ,
 
 53 L.Ed.2d 368
 
 (1977) );
 
 see also
 

 Estate of Braden ex rel. Gabaldon v. State
 
 ,
 
 228 Ariz. 323
 
 , 326 ¶ 13,
 
 266 P.3d 349
 
 , 352 (2011) (applying
 
 noscitur a sociis
 
 canon). "Otherwise dispose of," like the terms that precede it, connotes a voluntary transfer, as the majority recognizes,
 
 supra
 
 ¶¶ 11-14. Thus, where eminent domain is the product of voluntary agreement, § 40-285(A) applies and the Commission has jurisdiction over the voluntary transfer.
 

 ¶35 Although municipal power to acquire public utilities through eminent domain is unquestioned,
 
 see
 
 A.R.S. § 9-516, nothing in the eminent domain statutes expressly divests the Commission of authority to investigate the nature of the transaction or to protect the public's access to water before the acquisition. The majority correctly states that the Commission has no jurisdiction over municipal water facilities
 
 after
 
 the assets are acquired; but even then, the Commission retains authority to assure continuation of service through a new CC&N if the municipality fails to serve all prior customers under § 9-516(D).
 
 See
 

 supra
 
 ¶ 28.
 

 ¶36 Indeed, the enabling statute conflates eminent domain and voluntary acquisition. Section 9-515(A) provides that before "constructing, purchasing, acquiring or leasing" a facility for customers who are already served by a public utility, the municipality "shall first purchase and take over the property and plant of the public utility." Regardless of how the acquisition is effectuated, "[t]he fair valuation of the public utility shall be the equivalent of the compensation to be paid for
 the taking of private property for public use," as determined by agreement between the municipality and the public utility, by arbitration, or by a court in the eminent domain context. § 9-515(C).
 

 ¶37 The best explanation of how the Commission's authority relates to the acquisition of private water companies is provided by a 1962 Attorney General opinion, which although not legally binding is illuminating, especially in the absence of directly applicable Arizona case law. Op. Ariz. Att'y Gen. 62-7 (1962).
 
 See
 

 Benevolent & Protective Order of Elks #2656 v. State ex rel. Dep't of Liquor Licenses & Control
 
 ,
 
 239 Ariz. 121
 
 , 125 ¶¶ 26-27,
 
 366 P.3d 1011
 
 , 1015 (App. 2016) (relying on Attorney General opinion in interpreting statute in absence of relevant case law (citing
 
 Ruiz v. Hull
 
 ,
 
 191 Ariz. 441
 
 , 449 ¶ 28,
 
 957 P.2d 984
 
 , 992 (1998) )). The opinion observes that although § 40-285 's main purpose is to prevent looting of assets, the statute also ensures that "the rights of the customers of the utility will be adequately protected." Op. Ariz. Att'y Gen. 62-7,
 
 supra
 
 , at 12;
 
 see also
 

 Babe Invs. v. Ariz. Corp. Comm'n
 
 ,
 
 189 Ariz. 147
 
 , 151,
 
 939 P.2d 425
 
 , 429 (App. 1997) ("The legislature enacted A.R.S. section 40-285 to prevent 'looting' of a utility's facilities and
 
 impairment of service to the public
 
 ." (emphasis added) (citation omitted)). Consequently, when a municipality seeks to acquire the assets of a public utility "by negotiation[,] ... [b]efore [the seller-utility] can become a party to a valid agreement it must secure permission of the Corporation Commission under A.R.S. § 40-285." Op. Ariz. Att'y Gen. 62-7,
 
 supra
 
 , at 11-12.
 

 ¶38 The majority deems that analysis irrelevant because it views the transaction here as inherently involuntary, noting that the Attorney General opinion itself states that "[a]s an alternative procedure, the municipality may of course condemn as provided in A.R.S. § 9-515(C)(3), by court action."
 
 Id.
 
 at 12. But the opinion emphasizes that "[u]ntil [the public utility company] is relieved by the Commission of its duties, and the [CC&N] is retired, it is subject to the Commission's regulation."
 
 Id.
 
 at 11. In the interim, between the time the municipality begins the process of obtaining the public utility's assets and the culmination of that process, the Commission has the authority to ensure "that there are no other customers or persons who have been served by the private utility and that it will, in fact, have been relieved of all its duties to serve such customers."
 
 Id.
 
 at 14. Specifically, "[t]he duties and powers of the Commission are limited to the necessary hearings and orders to make sure that sale by the utility will not leave persons served neither by the utility nor the municipality."
 
 Id.
 
 at 12;
 
 see also
 

 Pueblo Del Sol Water Co. v. Ariz. Corp. Comm'n
 
 ,
 
 160 Ariz. 285
 
 , 286,
 
 772 P.2d 1138
 
 , 1139 (App. 1988) ("[T]he Commission should examine all the evidence available to it to determine whether or not the transfer is detrimental to the public interest."). It appears that is exactly the role the Commission was attempting to fill in this case.
 

 ¶39 In November 2013, Circle City initiated an action before the Commission to remove the development from its CC&N, which would divest the developer of any CAP water rights. Circle City alleged that the developer had abandoned the project. The Commission rejected Circle City's application, finding that the developer had not abandoned the project. Only thereafter did the City initiate condemnation proceedings, and it has taken the position that it has no obligation to provide the developer with water service.
 

 ¶40 If the City and Circle City voluntarily entered into eminent domain proceedings in order to divest the developer of valuable water rights, there could be a collision between the City's eminent domain powers, which are beyond the Commission's jurisdiction, and the Commission's broad authority under § 40-285(A) that ensures that customers' service rights are protected in a voluntary transfer of assets. In such circumstances, the remedy of approving a new CC&N under § 9-516(D) may prove illusory because no other provider might exist to provide such services; only the remedy of disapproval would preserve the customers' rights.
 
 See
 

 Babe Invs.
 
 ,
 
 189 Ariz. at 151
 
 ,
 
 939 P.2d at 429
 
 (noting § 40-285"prevent[s] ... impairment of service to the public"). And the "public use" requirement of eminent domain,
 
 Bailey v. Myers
 
 ,
 
 206 Ariz. 224
 
 , 230 ¶ 23,
 
 76 P.3d 898
 
 , 904 (App. 2003), is not a substitute for the public-interest objectives served by § 40-285(A). Reading the statutes to permit a municipality and a water company to extinguish contracted water services by agreeing to proceed through eminent domain rather than a sale of assets would defeat the important consumer protection purpose of § 40-285(A).
 
 See
 

 James P. Paul Water Co. v. Ariz. Corp. Comm'n
 
 ,
 
 137 Ariz. 426
 
 , 429,
 
 671 P.2d 404
 
 , 407 (1983) ("[T]he public interest is the controlling factor in decisions concerning service of water by water companies.").
 

 ¶41 Although ordinarily the exercise of eminent domain is coercive and involuntary, a "friendly condemnation," which is widely recognized in the law, is one "in which the condemnee desires the condemnation as ardently as does the condemnor," a situation in which "important community concerns may receive short shrift."
 
 E. Thirteenth St. Cmty. Ass'n v. N.Y. State Urban Dev. Corp.
 
 ,
 
 84 N.Y.2d 287
 
 ,
 
 617 N.Y.S.2d 706
 
 ,
 
 641 N.E.2d 1368
 
 , 1372 (1994) ;
 
 see also
 

 St. Joe Corp. v. McIver
 
 ,
 
 875 So.2d 375
 
 , 378 n.1 (Fla. 2004) ("In a friendly condemnation, the State agrees to condemn property that the owner desires for the State to condemn, and the State buys the property at an arms-length negotiated price."). The concept of friendly condemnation encompasses not only situations where the parties agree to the terms of condemnation, which happens frequently, but also the far more troubling situation where the parties agree to invoke eminent domain to divest the Commission of its duty and authority to protect utility consumers' water rights. In the latter situation, the transaction as a whole is
 
 entirely
 
 voluntary (even if some terms are disputed) yet clothed in the façade of a government power that otherwise is by its nature coercive.
 
 [1]
 
 Indeed, a friendly condemnation bears the indicia of a voluntary sale.
 

 ¶42 In contrast, eminent domain is "the sovereign right of the state to
 
 appropriate
 
 private land for the public good, subject to the constitutional limitation that the property owner is justly compensated."
 
 Calmat of Ariz. v. State ex rel. Miller
 
 ,
 
 176 Ariz. 190
 
 , 193,
 
 859 P.2d 1323
 
 , 1326 (1993) (emphasis added). The verb "appropriate" commonly means "to take without permission."
 
 Appropriate
 
 , Webster's Third New International Dictionary (3d ed. 2002). If the exercise of the power of eminent domain means to take private property without permission, then a voluntary agreement by the parties to use eminent domain simply cannot be viewed as a true condemnation.
 

 ¶43 A decision by the New Mexico Supreme Court that I, like the majority, deem highly persuasive, appears to be the only decision to expressly contemplate this scenario. In
 
 United Water New Mexico, Inc. v. New Mexico Public Utility Commission
 
 , the court applied a statute similar to § 40-285(A), construing the terms "sell, lease, rent, purchase or acquire" as "address[ing]
 
 voluntary acts
 
 by a public utility."
 
 121 N.M. 272
 
 ,
 
 910 P.2d 906
 
 , 909-10 (1996). The court held that a "forced condemnation of a utility by a municipality is not a voluntary, affirmative act of that utility," and therefore the public utility commission had no authority over it.
 

 Id.
 

 In contrast to the apparent situation here, the utility in that case vigorously contested the condemnation.
 
 Id.
 
 at 911. In fact, the court premised its decision entirely on the involuntary nature of the transaction, and expressly reserved "the issue of a utility agreeing with a municipality to submit willingly to a condemnation action in lieu of a consensual sale simply to avoid" commission approval.
 
 Id.
 
 at 909 n.4. Like the New Mexico Supreme Court, we should not foreclose a case where the use of eminent domain may constitute a wholly voluntary transaction.
 

 ¶44 I agree with the majority that if the acquisition here is involuntary, the Commission has no authority to veto the acquisition. But if the public utility and the City agreed to use eminent domain to avoid a contractual liability, the transaction cannot properly be
 characterized as involuntary. It was, and still is, unclear whether the City intended to condemn Circle City's public utility assets with or without Circle City's agreement. In other words, as far as the Commission knew, what the City and Circle City were really proposing was a voluntary, arms-length transaction to purchase Circle City under the guise of a condemnation. Section 40-285 assigns to the Commission the responsibility and authority to protect consumers' rights where a public utility seeks to voluntarily transfer its assets. The Commission has the power to investigate to meet this responsibility, and its jurisdiction over a public utility is not extinguished until the transfer is complete. Without the power to investigate, there is no way for the Commission to determine whether a transfer is voluntary-and thus subject to the Commission's jurisdiction under § 40-285-or involuntary, which would take the transfer out of the Commission's jurisdiction.
 

 ¶45 The upshot of the majority's decision is this: a municipality may evade the Commission's authority to protect consumers' water rights by substituting an entirely consensual contract with an entirely consensual exercise of eminent domain. But "[l]aw reaches past formalism."
 
 Lee v. Weisman
 
 ,
 
 505 U.S. 577
 
 , 595,
 
 112 S.Ct. 2649
 
 ,
 
 120 L.Ed.2d 467
 
 (1992). The majority errs in holding that an exercise of a municipality's eminent domain power categorically evaporates the Commission's consumer protection authority even if the transaction is voluntary and designed to eliminate valuable water rights. The parties vigorously dispute whether those rights exist, and the record does not yet illuminate whether the transfer of assets here is truly involuntary. That is because the City launched a preemptive strike to foreclose the Commission's inquiry into that very question. The majority vindicates the City's actions by short-circuiting the Commission's jurisdiction over the public utility which otherwise would have continued until the acquisition was consummated. With great respect to my colleagues, I dissent from the majority's decision to prematurely terminate the Commission's inquiry.
 

 Although the eminent domain power is broad, it is not boundless, as the majority observes,
 
 supra
 
 ¶ 17.
 
 See
 
 Ariz. Const. art. 2, § 17 ;
 
 Bailey
 
 ,
 
 206 Ariz. at
 
 230 ¶ 23,
 
 76 P.3d at 904
 
 . Just as a court should look behind the government's bare assertion that a particular exercise of eminent domain is for a public use, so also under the statutes should it determine whether the exercise of eminent domain is truly involuntary in this context.